ABELMAN, FRAYNE & SCHWAB
Lawrence E. Abelman (LA 6486)
Jeffrey A. Schwab (JS 9592)
Anthony A. Coppola (AC 3548)
666 Third Avenue
New York, New York 10017
(212) 949-9022

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————X
KOON CHUN HING KEE SOY & SAUCE :
FACTORY, LTD., a company organized :
under the laws of Hong Kong
                                   :
        Plaintiff,                 :
                                   :
    -against-                      :    04 Civ. 2293 (JFB)(SMG)
                                   :
STAR MARK MANAGEMENT, INC., a      :
New York corporation; GREAT MARK   :
CORPORATION, a New York corporation;:
and JOHN DOES 1 through 10         :
                                   :
        Defendants.                :
———————————————————X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

(FILED CONCURRENTLY WITH THE DECLARATION OF ANTHONY A.
COPPOLA; DECLARATION OF RAYMOND CHAN AND A STATEMENT OF
UNCONTROVERTED FACTS)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... iii

I.   PRELIMINARY STATEMENT ............................................. 1

II.  INTRODUCTION ...................................................... 1

III. BACKGROUND ........................................................ 3

     A.   Plaintiff's Trademarks ...................................... 3

     B.   Defendants' Counterfeiting Activities ....................... 5

          i.    Initial Findings of Counterfeiting Activity
                in the United States .................................. 5

          ii.   The Court Order of Seizure and the Seizure
                of Goods from Defendants' Warehouse ................... 7

     C.   The Koon Chun Method of Manufacturing and Packaging
          Cans and the Differences with Defendants' Cans .............. 8

          i.    The Date and Time Stamping of the Cans ................ 8

          ii.   The Chinese Characters on the Cans ................... 10

          iii.  The Packaging of the Cans ............................ 11

     D.   The Authorization of Manufacturing and
          Importation of Counterfeit Goods by Jimmy Zhan ............ 12

IV.  ARGUMENT ......................................................... 15

     A.   Summary Judgment Standard .................................. 15

     B.   Trade Mark and Trade Dress Infringement .................... 16

          i.    Legal Standard ....................................... 16

          ii.   Whether Trademark is Protected ....................... 17

|     |       | iii.   | Whether Defendants' Product is Counterfeit . . . . . . . . . . . . . . . . . . . . . . . 17 |
|-----|-------|--------|---|
|     |       | iv.    | Whether the Counterfeit Marks Create a Likelihood of Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |
|     | C.    | Willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 | |
|     |       | i.     | Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 |
|     | D.    | The Cans Imported and Sold by Defendants are Counterfeits and Infringe Koon Chun's Trademarks and Trade Dress . . . . . . . . . . . . . . . . . . 19 | |
|     | E.    | Defendants Star Mark and Zhan Acted Wilfully or With Willful Blindness of Koon Chun's Trade Mark . . . . . . . . . . . . . . . . . . . . . . 21 | |
| V.  | CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24 | | |

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986) .................................................. 15

*Arrow Fastener Co., Inc. v. Stanley Works*,
   59 F.3d 384 (2d Cir.1995) ............................................. 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................. 15

*Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*,
   933 F.2d 162 (2d Cir.1991) ............................................ 15

Consolidated Cigar Corp. v. Monte Cristi De Tabacos,
   58 F.Supp.2d 188, 196 (S.D.N.Y. 1999) ............................... 17, 20

*Danone Asia PTE. Ltd. v. Happy Dragon Wholesale, Inc.*,
   2006 WL 845573 (E.D.N.Y. Mar. 29, 2006) ............................... 17

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
   834 F.2d 54 (2d Cir.1987) ............................................. 15

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   286 F.Supp.2d 284 (S.D.N.Y. 2003) ................................. 16, 18

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   315 F.Supp.2d 511 (S.D.N.Y. 2004) ..................................... 18

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir.1992) .......................................... 19

*K2 Advisors, LLC v. K2 Volatility Fund L.P.*,
   2002 WL 31235701 (S.D.N.Y. Oct. 4, 2002) .............................. 17

*Kepner-Treqoe, Inc. v. Vroom*,
   186 F.3d 283 (2d Cir. 1999) ........................................... 18

*Knight v. United States Fire Ins. Co.*,
   804 F.2d 9 (2d Cir.1986) .............................................. 15

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*,
    192 F.3d 337 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lang v. Retirement Living Publ'g Co., Inc.*,
    949 F.2d 576 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F.Supp.2d 448 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Louis Vuitton S.A. v. Lee*,
    875 F.2d 584 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nike, Inc. v. Top Brand Company Ltd.*,
    2005 WL 1654859 (S.D.N.Y. Jul. 13, 2005) . . . . . . . . . . . . . . . . . . . . . . 17, 18, 23

*Philip Morris USA Inc. v. Felizardo*,
    2004 WL 1375277 (S.D.N.Y. June 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
    287 F.2d 492 (2d Cir.1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tanning Research Laboratories, Inc. v. Worldwide Import & Export Corp.*,
    803 F.Supp. 606 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
    1996 WL 719381 (S.D.N.Y. Dec. 13, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Virgin Enters. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Williams v. Obstfeld*,
    314 F.3d 1270 (11th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATUTES AND RULES**

15 U.S.C. § 1114 .................................................................. 16

15 U.S.C. § 1116 .................................................................. 16

15 U.S.C. § 1117 .................................................................. 18

15 U.S.C. § 1125 .................................................................. 16

15 U.S.C. § 1127 .................................................................. 17

15 U.S.C. § 1067(b) ............................................................... 17

Fed. R. Civ. P. 1 .................................................................. 15

Fed. R. Civ. P. 56 ............................................................... 1, 15

L. Civ. R. 56.1 ..................................................................... 1

I.  **PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 56, plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd. ("Koon Chun") submits this memorandum in support of its motion for partial summary judgment that the Hoisin Sauce purchased and sold by Defendants Star Mark Management, Inc., Great Mark Corp. and Jimmy Zhan (collectively, "Defendants" or "Star Mark") bearing plaintiff's KOON CHUN SAUCE FACTORY and design (hereinafter, The KOON CHUN trademark") infringe that trademark and are counterfeit goods, and that defendant Jimmy Zhan knowingly and willfully counterfeited the KOON CHUN Trademark. Filed concurrently herewith are the declarations of Anthony A. Coppola and Raymond Chan as well as a Statement of Uncontroverted Facts pursuant to Local Civ. R. 56.1.

II. **INTRODUCTION**

Plaintiff seeks summary judgment of trademark infringement and counterfeiting because there is no genuine issue of material fact that five (5) pound cans of Hoisin sauce bearing the Plaintiff's trademark which were (i) purchased from defendants by a private investigator on April 3, 2004, (ii) seized from defendants' warehouse pursuant to a Court Order on June 14, 2004 and (iii) retrieved from defendants in April 2005 (collectively, "Defendants' Goods") are not genuine product originating from Plaintiff.[1]

The Defendants' Goods are blatant duplications of Plaintiff's product. Indeed, on casual inspection, the cans and packaging of Defendants' Goods appear virtually identical to the genuine Koon Chun cans and boxes. There can be no question that summary judgment of trademark infringement and counterfeiting is warranted because defendants do not dispute that:

- the cans of Defendants' Goods use the exact same color scheme and geographic patterns as Plaintiff's product;

---

[1] The goods at issue are hundreds of cases of plaintiff's Hoisin sauce, which is a soy-based sauce used in Chinese cuisines. Plaintiff packages its Hoisin sauce in five pounds cans which are distinctively decorated and bear plaintiff's federally-registered Koon Chun Trademark. The cans are, in turn, sold in cases of six (6) cans each. These cases are also distinctively decorated and bear the Koon Chun Trademark.

- the cardboard boxes in which the cans of Defendants' Goods are packaged are virtually identical in appearance to the boxes used by Koon Chun; and
- the cans and boxes of Defendants' Goods blatantly duplicate the Koon Chun Trademark.

Despite defendants' slavish copying, the counterfeit cans have several markings which make them noticeably and obviously detectable as being non-genuine goods, including the uncontested facts that:

- the counterfeit cans do not use the same font on the date/time stamp which appears on the top lid of each can of product as the genuine Koon Chun product;
- the counterfeit cans do not use a YYDDMM (Year/Day/Month) sequence for the date stamp as used with genuine Koon Chun product;
- the counterfeit boxes contain numerous cans with the same time stamping which is physically impossible with the automated time stamping machine utilized by Koon Chun in its production process;
- the Chinese characters appearing on the counterfeit can are subtly but noticeable distinguishable from the characters used on the genuine Koon Chun cans; and
- the counterfeit boxes are sealed using a manual hand gluing process whereas the genuine boxes are machine glued during Koon Chun's manufacturing process.

These differences between the genuine and counterfeit goods form a basis for summary judgment which defendants cannot refute. Defendants have no factual basis by which it can assert that the cans in question are genuine and can offer no proof (or raise any issue of material fact) to refute the contention that the cans seized from defendants are counterfeit.

A second aspect for the summary judgment motion concerns Defendants' knowing and willful acts of trademark infringement and counterfeiting. Defendant Jimmy Zhan has admitted that he knew that less expensive but allegedly similar quality products manufactured in Mainland China were a substitute for genuine Hoisin sauce he used to source from Hong Kong. Moreover, Mr. Zhan further admitted that he knew Koon Chun goods were manufactured in Hong Kong (as opposed to

Mainland China). During the same period of time that Mr. Zhan was importing the substitute for genuine Hoisin sauce from China, he purchased other genuine Koon Chun products (except for 5 pound cans of Hoisin sauce) from Koon Chun in Hong Kong. Moreover, Mr. Zhan later knowingly received Koon Chun Hoisin Sauce from China (from suppliers named Tin Shing Trading Company, New United Trading Company and Mr. He Lin) that was of an obvious poor quality (evidenced by Mr. Zhan's insistence that his suppliers in China to make the goods taste similar and have stronger boxes). However, he did not investigate the reason for this quality difference and indeed turned a blind eye to such knowledge and continued to purchase goods from these suppliers. Also, Mr. Zhan or another company he owned had been sued on another occasion and he received cease and desist letters from another vendor on various goods that he obtained from the same suppliers from whom he had obtained the Koon Chun branded Hoisin sauce. Despite knowing that these sources were suspected providers of infringing and counterfeit products, Mr. Zhan turned a blind eye to this fact and his prior legal disputes and continued to deal with the suspicious sources in order to import counterfeit Koon Chun Hoisin sauce. Mr. Zhan also admitted to buying the Defendant's Goods from China because they were cheaper and testified that he did not look into why they were cheaper or why they were manufactured in China, and he only cared that the prices were low. By turning a blind eye to these facts, Mr. Zhan has willfully infringed Plaintiff's trademark and counterfeited Koon Chun's Hoisin sauce product and summary judgment on this issue should be granted.

### III. BACKGROUND

#### A. Plaintiff's Trademarks

KOON CHUN is a corporation organized under the laws of Hong Kong. All of KOON CHUN's products are manufactured in Hong Kong and sold to trading companies (exporters) in Hong Kong. These exporters usually buy KOON CHUN products on behalf of distributors around the world. These distributors sell KOON CHUN's products to other distributors, food manufacturers, grocery stores, gourmet food stores, restaurants and consumers throughout the world.

The United States is one of the largest markets for the KOON CHUN products in the world.[2]

KOON CHUN is the owner of the incontestible U.S. Trademark Registration No. 1,410,790 for KOON CHUN SAUCE FACTORY and design for Chinese cooking, seasoning, sauces and vinegars and processed fruits and vegetables (hereinafter, "the KOON CHUN Trademark").[3] The KOON CHUN Trademark was registered with the United States Patent and Trademark Office (PTO) in 1986. Coppola Decl. 1. The Trademark registration is valid, subsisting and incontestible. The KOON CHUN Trademark has been in continuous use since 1928. See Chan Decl. ¶ 3.

In addition to the KOON CHUN Trademark, for more than ten (10) years, KOON CHUN has used a distinctive label design across all of its products. *Id.* The excellence of KOON CHUN's products has been widely recognized in the United States among Chinese restaurants, Asian grocers and consumers, and has been reported favorably by the press, including the *New York Times*. Chan Decl. ¶ 14.

One of the products sold by Plaintiff which bears the KOON CHUN Trademark is "Hoisin Sauce." Hoisin sauce is a sweet and spicy sauce used in cooking and as a condiment for Chinese foods. The well-known Chinese dish "Peking Duck" is served using Hoisin sauce as a condiment. Chan Decl. ¶ 15.

A sample product label is shown below:

---

[2] See Paragraphs 4 - 6 of the Declaration of Raymond Chan, plaintiff's Regional Manager - Americas, submitted herewith (hereinafter, "Chan Decl. ¶ ___").

[3] A copy of this trademark registration is annexed as Exhibit 1 to the Declaration of Anthony A. Coppola submitted herewith (hereinafter "Coppola Decl. Exh. ___").



In addition, KOON CHUN produces more than twenty (20) types of products all of which bear the KOON CHUN Trademark. See Chan Decl. ¶ 17. The use of this mark on so many products appearing on shelves in grocery stores throughout the country serves an ideal promotional media and creates a brand image that is widely known and highly regarded. *Id.* As part of KOON CHUN's label design ("the KOON CHUN Trade Dress" or "Trade Dress") a unique combination of colors and geometric shapes serves to readily distinguish for consumers the Plaintiff's wide range of products from the goods of competitors. Plaintiff enjoys substantial good will in the Trade Dress owing to Plaintiff's lengthy and exclusive use of the Trade Dress together with the Trade Dress's inherently distinctive nature. See Chan Decl. ¶ 18.

Unfortunately, despite KOON CHUN's successes, in September 2003, Koon Chun employees discovered that counterfeit products bearing the KOON CHUN Trademark were being sold to restaurants and consumers in the United States. Chan Decl. ¶ 19.

B. <u>Defendants' Counterfeiting Activities</u>

    i.    **Initial Findings of Counterfeiting Activity in the United States**

Toward the end of 2003 KOON CHUN began to suspect that an illicit industry had developed throughout the United States involving the unauthorized and unlawful manufacture, importation, sale

and distribution of merchandise, including canned goods, bearing counterfeits or colorable imitations of the trademark and/or name of KOON CHUN sauces.

In or about September 2003, it was discovered by KOON CHUN that counterfeit cans of its Hoisin sauces were being sold and distributed in the United States. *Id.* After an investigation, it was discovered by KOON CHUN that one or more of the Defendants were offering canned sauces bearing the plaintiff's KOON CHUN Trademark and Trade Dress for sale from its facility at 1101 Metropolitan Avenue in Brooklyn, New York. See Chan Decl. ¶¶ 20 - 21.

Specifically, on April 3, 2004, Koon Chun's investigator, Henry George Nolde, purchased from Defendants' six (6) cans of "Koon Chun Hoisin sauce." Nolde Decl. ¶¶14 - 15.[4] The product has the same distinctive label and color pattern and bears the trademark KOON CHUN SAUCE FACTORY. See Nolde Decl. ¶ 5. The photograph below depicts the counterfeit goods purchased from Defendants' warehouse:



As is unquestionably apparent, the goods purchased from defendants are a virtual identical copy of the genuine KOON CHUN product. However, the sauces purchased from Defendants are not genuine "KOON CHUN" products. See Chan Decl. ¶ 23 - 24; Nolde Decl. ¶ 22.

In April, 2004, photographs and several cans of the goods purchased from Defendant's warehouse were provided to Mr. Raymond Chan for analysis. See Chan Decl. ¶ 22 - 23. Mr. Chan

---

[4]  A copy of the Declaration of Henry George Nolde which was submitted in conjunction with Plaintiff's Motion for an Order of Seizure filed on June 2, 2004 is annexed as Coppola Decl. Exh. 2.

analyzed the photographs and the product and confirmed that the goods were not manufactured or sold by KOON CHUN or its distributors and were counterfeits. *Id*. The sauces are packaged in metal cans which bear the KOON CHUN SAUCE FACTORY trademark and design and the labels bear the same geometric design and color scheme. *Id.* The quality of the sauce is clearly inferior to the genuine goods in color and taste (See Chan Decl. ¶ 24), although the average purchaser, even if a side-by-side comparison with genuine sauces were possible - could easily be fooled into believing the unauthorized sauces were genuine.

    ii.    **The Court Order of Seizure and the Seizure of Goods from Defendants' Warehouse**

In June 2004 Koon Chun, after determining that Star Mark was selling counterfeit Koon Chun Hoisin Sauce, obtained an Order to Show Cause With Temporary Restraining Order, Seizure Order and Accelerated Discovery from this Court ("Seizure Order") and counterfeit goods and certain documents were seized from the Star Mark warehouse.[5]

On June 14, 2004 a seizure was conducted on Star Mark's warehouse located at 1101 Metropolitan Avenue in Brooklyn, New York. Coppola Decl. ¶¶ 7 - 8. At the seizure, 103 cases of Koon Chun Hoisin sauce was taken from Defendants' warehouse along with eight hundred and seventy eight (878) pages of documents. Coppola Decl. ¶ 9; Chan Decl. ¶ 31. These 103 cases were very similar in appearance (both the cans and the cardboard packaging) to the goods purchased by plaintiff's investigator from defendant Star Mark in April 2004.[6] Chan Decl ¶ 32.

Moreover, a review of certain documentation seized on June 14th indicated that a shipment of goods possibly containing counterfeit Koon Chun Hoisin Sauce would be arriving in New York on or about June 20, 2004. Given this information, Koon Chun requested and received the Court's

---

    [5]    A copy of the Court's Seizure Order dated June 4, 2004 is annexed as Coppola Decl. Exh. 3.

    [6]    The 103 cases of goods are presently in plaintiff's counsel's possession and most of them are stored in an off-site storage facility. Coppola Decl. ¶ 9.

permission to notify the United States Customs Office of the pending shipment and request that inspectors search for such goods and seize the same if found. The shipment arrived, however, U.S. Customs did not inspect the shipment nor seize any goods and released the same to Defendants. Coppola Decl. ¶ 10.

Subsequently, defendants turned over an additional 680 cases of Koon Chun branded Hoisin sauce to plaintiff which is presently in plaintiff's counsel possession and most of them are stored in an off-site facility along with the 103 cases originally seized. Coppola Decl. ¶ 11. These 680 cases were virtually identical in appearance (both the cans and the cardboard packaging) to the goods purchased from defendant Star Mark in April 2004. See Chan ¶ 39.

### C.  The Koon Chun Method of Manufacturing and Packaging Cans and the Differences with Defendants' Cans

Indeed, the packaging for the counterfeit product is nearly an exact reproduction of the packaging with genuine "KOON CHUN" products. See Chan Decl. ¶¶ 25, 35. In actuality, the counterfeit labels are identical to the authentic KOON CHUN products. The most obvious difference (to one who knows where to look) between the counterfeit and authentic products, and the most conclusive proof that the counterfeit labels are not authentic is the difference in the appearance in the time stamp on the lid of the can. Chan Decl. ¶ 26, 41.

#### i.  The Date and Time Stamping of the Cans

The font used on the counterfeit time stamp is not the same as on the original KOON CHUN cans. See Chan Decl. ¶¶ 28, 34, 40. The time stamp on a genuine KOON CHUN product is printed by an inkjet machine. Prior to December 2003, the machine used a six digit date and time stamp in the form of YYDDMM (year-date-month) and HH:MM:SS (hour-minute-second). Chan Decl. ¶ 26. The time stamps are printed during the production process and in a given box of product, virtually all of the time stamps are different since it is very unlikely that two cans will pass through the inkjet

machine at exactly the same split-second in time (although this does happen on very rare occasion). *Id.*

However, the entire case of counterfeit products (6 cans) purchasd by Nolde used only one time stamp (i.e., "031027" "16:28:33"). Apparently, the counterfeit product manufacturer did not have an inkjet time stamp machine and may have used a silk screen method to print an imitation time stamp that used the same numbers repeatedly. Moreover, the counterfeit manufacturer did not understand KOON CHUN's date coding scheme and used a scheme of YYMMDD (year-month-date). No genuine KOON CHUN products have ever borne a date code of YYMMDD and thus no genuine products could ever bear a date code of 031027 for the most obvious reason -- because there is no 27th month in a given year. Chan Decl. ¶ 27. Photographs demonstrating this difference are depicted below:




**An Authentic KOON CHUN Lid**          **The Counterfeit Lid**

As can also be noted, the fonts used in the time/date stamp of the counterfeit can is different from the fonts in the genuine cans. Chan Decl. ¶ 28.

The cans seized from defendants' warehouse on June 14, 2004 also utilize a different time/date stamp font. Chan Decl. ¶ 34. Indeed, for the reasons set forth above (specifically, the improper font, time stamp and date coding sequence), these 103 cases of goods are not genuine Koon Chun product. Chan Decl. ¶ 32.

Moreover, the 680 cases of goods turned over by defendants are not manufactured in accordance with Koon Chun's method of manufacture either.

Although the print font for the date coding on some of the 680 cases of Hoisin sauce turned over by Defendants' counsel (and depicted above) is different from the print font on the cases of Hoisin sauce purchased from and seized from Defendants' warehouse, it is still not the same font used on genuine KOON CHUN product. Chan Decl. ¶ 40.

In addition, the date coding sequence for the can taken from the 680 cases is not in either a YYDDMM or YYMMDD sequence as there is neither a 39th month in a year or a 39th day in any month. Chan Decl. ¶ 41.

As well, there were multiple cans in a case which had the same identical date coding sequence and time stamp which is an impossibility with genuine Koon Chun products. Chan Decl. ¶ 41.

ii.   **The Chinese Characters on the Cans**

Another subtle difference between the genuine Koon Chun cans and the counterfeits can be seen in the fonts of the Chinese characters depicted on the cans. Chan Decl. ¶ 47. Illustrative of this is a can taken from the 680 cases of product turned over to the plaintiff by the defendants. The Chinese characters as they appear on the genuine cans are depicted in the photo on the left while the Chinese characters of the counterfeit cans are depicted on the right:

 

The differences are slight but apparent. In the middle two characters of the counterfeit can, the yellow shading of the left character is different. On the right character (of the middle two), the second last red horizontal line is continuous and meets the vertical lines on the counterfeit; while in the genuine can that line is not continuous and does not cross the vertical lines. Also, this right character is flat based in the genuine can; there are two red "legs" protruding from the red horizontal line on the counterfeit as opposed to a flat line being used on the genuine can. Chan Decl. ¶ 47. Koon Chun cans are printed from films kept in Koon Chun's office, and will not produce cans that bear such an appearance as the counterfeit. See Chan Decl. 45.

### iii. The Packaging of the Cans

The cans of Hoisin sauce are packaged in cardboard containers. Boxing machines are used on Koon Chun's automated assembly packaging line to box the cans. (Chan Decl. ¶ 48).[7]

During the course of the manufacturing process, a "boxing machine" injects lines of glue on the side flaps of a box. The top and bottom flaps of the box are folded onto the side flaps which seal the box containing the cans inside. Chan Decl. ¶ 49. When the flaps of a box are opened, the lines of the glue are clearly visible to an observer. A photograph of the lines of the box are depicted below.



---

[7] A CD providing a video of Plaintiff's production and packaging process was produced to defendants during discovery which demonstrates the entirety of the time/date stamping and packaging processes. A copy of this CD, filed under seal pursuant to a protective order entered in this case, is annexed as Coppola Decl. Exh. 4 for the Court's review.