# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 04-CV-2293 (JFB) (SMG)

KOON CHUN HING KEE SOY & SAUCE FACTORY, LTD.,

Plaintiff,

VERSUS

STAR MARK MANAGEMENT, INC., GREAT MARK CORP., JIMMY ZHAN, AND JOHN DOES 1 THROUGH 10,

Defendants.

MEMORANDUM AND ORDER
January 8, 2007

JOSEPH F. BIANCO, District Judge:

Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd., ("Koon Chun") brings this trademark action against defendants Star Mark Management, Inc. ("Star Mark"), Great Mark Corporation ("Great Mark"), Jimmy Zhan ("Zhan"), the president of Star Mark and Great Mark, and John Does 1 through 10 (collectively, "defendants"). Plaintiff alleges the following claims against defendants: (1) infringement of plaintiffs' registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); (2) counterfeiting of plaintiff's registered trademark in violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116; (3) infringement of plaintiff's trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition in violation of Section 35(a) of the Lanham Act, 15 U.S.C. § 1125(a); (5) dilution in violation of New York General Business Law § 360-l; and (6) trademark infringement and unfair competition under the common law.

The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, which confer jurisdiction over actions involving violations of trademarks, 28 U.S.C § 1331, which authorizes jurisdiction over civil actions arising under federal law, and principles of pendent jurisdiction as to the state law claims.

Plaintiff moves for summary judgment as to the trademark and trade dress infringement, and the counterfeiting claims under the Lanham Act. For the reasons that follow, plaintiff's motion is granted in part and denied in part.

Defendants also move for summary judgment as to plaintiff's claim for recovery

of profits lost as a result of the alleged infringing activity by defendants. For the reasons that follow, defendants' motion is denied.

Plaintiff also moves for reimbursement of its costs and fees incurred in litigating defendants' motion. For the reasons that follow, plaintiff's motion is denied.

This case was re-assigned to the undersigned from the Honorable John Gleeson on February 10, 2006. The Court held oral argument on the instant motions on December 8, 2006.

## I. BACKGROUND

### A. ADMISSIBILITY OF PLAINTIFF'S SUPPORTING EVIDENCE

Initially, this Court finds that plaintiff has offered admissible proof in support of its motion. Specifically, the Court finds that (1) the supporting declaration of Raymond Chan ("Chan Declaration") dated July 17, 2005, and (2) certain business records of Koon Chun may be considered in ruling on the instant motions for summary judgment.

Rule 56(e) of the Federal Rules of Civil Procedure provides that, upon a motion for summary judgment, "[s]upporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[1] The test

for admissibility "is whether a reasonable trier of fact could believe the witness had personal knowledge." *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000).

In multiple submissions to the Court, defendants argue that (1) Chan lacks personal knowledge to make the statements in his declaration regarding Koon Chun's manufacturing and packaging processes or the business records he reviewed in preparing the declaration, and (2) "there is no evidence to support the admissibility" of the duplicates of Koon Chun's business records offered in support of plaintiff's motion. (Dfts.' Memorandum in Opposition to Pl.'s Motion (hereinafter, "Dfts.' Opp. Mem.") at 6.) For the reasons that follow, the Court finds that (1) Chan has personal knowledge of the manufacturing and packaging processes of Koon Chun described in the declaration, and of the information contained in the business records he reviewed in his official capacity in preparing the declaration, and (2) plaintiff has provided a sufficient basis for the business

---

[1] Both parties have submitted signed statements of individual declarants in support of their respective motions, and labeled those statements as "declarations" rather than "affidavits." For the purposes of ruling on the instant motions, the

Court finds that all of the declarations of non-attorney declarants submitted in this case substantially comply with the requirements set forth in 28 U.S.C. § 1746 and, therefore, may be substituted for affidavits provided in support of the parties' respective motions for summary judgment. *See* 28 U.S.C. § 1746 (providing that an unsworn declaration may be submitted to a court in lieu of an affidavit if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare . . . under penalty of perjury that the foregoing is true and correct"); *McLaughlin v. Cohen*, 686 F. Supp. 454, 458 (S.D.N.Y. 1988) (noting that Section 1746 "permits an unsworn declaration made under penalty of perjury to substitute for a sworn affidavit").

records to be considered by the Court in ruling on the instant motions.

### 1. The Chan Declaration

The deposition testimony of Chan demonstrates that, even before he began work at Koon Chun, he had "personal experience" with Koon Chun's manufacturing and packaging processes. (Declaration of Anthony A. Coppola in Support of Pl.'s Motion (hereinafter, "Coppola Decl.") Exh. 1.) Specifically, Chan testified that, between 1967 and 2004, he visited the Koon Chun factory approximately twenty times and, during those visits, obtained "a very good idea" of how the hoisin sauce was "manufactured and how it got packaged." (*Id.*) Although Chan observed the processes at issue in more exacting detail in 2004, the Court finds that his uncontroverted testimony describing prior personal experience with those processes demonstrates sufficient personal knowledge, pursuant to Rule 56(e), to support the statements contained in his declaration. (*Id.*)

Moreover, as an officer of Koon Chun, Chan may offer evidence in his declaration based on personal knowledge obtained from a review of his company's records. *See Searles*, 98 F. Supp. 2d at 461; *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005) ("[A]n affiant may also testify as to the contents of records that [he] reviewed in [his] official capacity."); *Danone Asia Pte v. Happy Dragon Wholesale, Inc.*, No. 05 Civ. 1611 (CPS), 2006 WL 845573, at *4 n.3 (E.D.N.Y. March 29, 2006) (finding that the affiant, "as an officer of [the plaintiff corporation]" may offer evidence based on personal observations and information obtained from a review of the company's records). Chan states in his declaration that he is a Regional Manager of Koon Chun. (Declaration of Raymond Chan (hereinafter, "Chan Decl.") ¶ 1.) Accordingly, the Court finds that Chan's position with Koon Chun "qualified [him] to review the relevant business materials in an official capacity and [to] make sworn statements based upon those materials." *Searles*, 98 F. Supp. 2d at 461.

Therefore, the Court finds that Chan had personal knowledge of the facts contained in his declaration. Accordingly, the Chan Declaration is admissible in its entirety and may be considered by the Court pursuant to Rule 56(e).

### 2. Business Records of Koon Chun

The Court finds that the copies of business records of Koon Chun offered in support of plaintiff's motion would be admissible at trial pursuant to the business records exception to the rule against hearsay and, therefore, may be considered by the Court pursuant to Rule 56(e). Rule 803(6) of the Federal Rules of Evidence provides in pertinent part that a record, "made at or near the time by . . . a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record," is admissible upon the "testimony of the custodian or other qualified witness," absent some indication of untrustworthiness. FED R. EVID. 803(6). Thus, when offering business records in support of a motion for summary judgment, in order to avoid the bar against hearsay, the offering party should present an affidavit "from a document custodian" that "explain[s] whether [the records] were kept in the ordinary course of business," although that person "need not have personal knowledge of the actual creation of the document." *Tradax*

*Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 378-79 (S.D.N.Y. 2004); *see United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988), *cert. denied*, 488 U.S. 966 (1988) (noting that "someone who is sufficiently familiar with the business practice must testify that [the] records were made as part of that practice").

In this case, after defendants raised the authentication issue in their opposition papers, plaintiff submitted two declarations by Wing Ming Tam ("Tam"), a Manager in Koon Chun's Hong Kong factory responsible for "accounting and administration."[2] (Declaration of Wing Ming Tam dated Dec. 15, 2006 in Further Support of Pl.'s Motion (hereinafter, "Tam Decl.") ¶¶ 1-2.) In his declaration dated December 15, 2006, Tam states that all of the business records of Koon Chun at issue in this case were prepared by Tam or others in the "ordinary course" of business and that it was the "ordinary business practice" of Koon Chun to prepare such records. *Id.* ¶¶ 5 & *passim.* Accordingly, the business records of Koon Chun offered in support of plaintiff's motion are admissible and will be considered by the Court in ruling

upon the instant motions.[3] *See Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (finding that at the summary judgment stage "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party") (internal quotation marks omitted); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ("[T]he issue was first raised in [d]efendants' summary-judgment reply papers. . . . [T]he district court had discretion to consider it.") (internal citations omitted); *see also Tradax Energy*, 317 F. Supp. 2d at 379 (permitting plaintiff additional time to submit affidavits from the appropriate document custodian in order to establish the authenticity of records); *cf. Mattera v. Clear Channel Commc'ns Inc.*, – F. Supp. 2d –, No. 06 Civ. 1878 (DC), 2006 WL 3290836, at *12 n.4 (S.D.N.Y. Nov. 14, 2006) (considering affidavits attached to a reply memorandum of law in further support of a motion to dismiss).

Moreover, a "duplicate is admissible to the same extent as an original unless (1) a

---

[2] At oral argument and in a post-argument submission to the Court, defendants argue that both of the declarations of Tam fail to comply with 28 U.S.C. § 1746. As discussed *supra*, upon examination of the Tam declarations, the Court finds that both documents "substantially compl[y] with [the] statutory requirements of Section 1746" and, accordingly, may properly be considered "in ruling on a summary judgment motion." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999); *see also McLaughlin*, 686 F. Supp. at 458 (noting that Section 1746 "permits an unsworn declaration made under penalty of perjury to substitute for a sworn affidavit").

[3] Defendants argue that the Tam declarations should not be considered by the Court because Tam is "not competent" to testify to "the matters asserted" in plaintiff's motion or to serve as a document custodian or qualified witness under Rule 803(6). (Dfts.' Supp. Response in Opp. to Pl.'s Motion (hereinafter, "Dfts.' Supp.") at 3-4.) The Court rejects these arguments. First, the Tam declarations do not contain substantive testimony regarding "the matters asserted" in plaintiff's motion. Second, the Court finds, based on the representation that Tam is "responsible for the accounting and administration function" at Koon Chun, that Tam is competent to testify as to the elements of Rule 803(6) as they relate to the business records of Koon Chun. (Tam Decl. ¶ 3.)

genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. The party opposing the introduction of a duplicate has the burden of demonstrating "a genuine issue as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original." *Chang An-Lo*, 851 F.2d at 557 (quoting *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980)); *see also Colormaster Printing Ink Co. v. S.S. ASIAFREIGHTER*, No. 75 Civ. 5204, et al. (JMC), 1991 WL 60413, at *3 (S.D.N.Y. April 9, 1991). Here, defendants raise "no genuine issue with respect to any of these concerns." *Chang An-Lo*, 851 F.2d at 557. Instead, defendants simply note that Chan "has never seen the originals of the documents" referred to in his declaration and point to plaintiff's initial failure to present a custodian of the documents referenced in the Chan Declaration. (Dfts.' Mem. in Opp. at 7.) Therefore, because plaintiff has since produced the declaration of a document custodian, Tam, defendants fail to "raise[] a genuine question as to the" authenticity of the duplicate business records relied upon in the Chan Declaration.[4] *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 71 (2d Cir. 2006); *see*

*Colormaster*, 1991 WL 60413, at *3 ("[M]ere speculation is not sufficient to raise a showing of a genuine issue as to authenticity or unfairness."). Accordingly, the Court finds that defendants have not met their burden of demonstrating a genuine issue as to the authenticity of the duplicate records or any unfairness that may result from admission of the records.[5]

## B. THE FACTS

The following facts are taken from the parties' depositions, declarations, exhibits and respective Local Rule 56.1 statements of facts.[6] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Thus, with regard to plaintiff's motion as to the infringement and counterfeiting claims, the Court will construe the relevant facts in favor

---

[4] Moreover, the Court notes that plaintiff has submitted a second declaration by Raymond Chan dated December 15, 2006, wherein Chan states that he has visited Koon Chun's factory in Hong Kong and inspected the original versions of the records at issue here. Chan states that the duplicates submitted to the Court, save for black marks indicating excerpted portions of certain documents, are "true and correct copies" of the original records. (Declaration of Raymond Chan in Further Support of Pl.'s Motion ¶¶ 7 & *passim*.)

[5] The Court will not determine the admissibility of a video contained on a compact disc purporting to show the packaging process for Koon Chun cans of hoisin sauce. Plaintiff has represented to the Court that the video is not being offered into evidence, but "only serves as an aid to the understanding of" the statements in Chan's declaration. (Pl.'s Reply Mem. at 9.) The Court has not relied on the video in ruling on the instant motions and finds that the parties' written submissions and photographic evidence presented to the Court provide a sufficient basis to so rule.

[6] Where only one party's statement is cited, the other party does not dispute the facts alleged. The Court notes that six 56.1 statements have been filed by the parties: one by the moving party on each motion, one counterstatement by the non-moving party on each motion, and one response to the counterstatement by the moving party on each motion.

of defendants; and with regard to defendants' motion as to plaintiff's recovery of lost profits, the Court will construe the relevant facts in favor of plaintiff.

### 1. The Parties

Plaintiff Koon Chun manufactures and distributes various sauces, seasonings, and vinegars used in Chinese foods. (Chan Decl. ¶ 1.) Koon Chun's sole manufacturing facility is located in Hong Kong, where, among other products, the company produces hoisin sauce – a sweet and spicy sauce used in cooking and as a condiment for Chinese foods, such as Peking Duck. (Pl.'s Statement of Uncontroverted Facts in Support of its Motion (hereinafter, "Pl.'s 56.1") ¶¶ 1- 4; Chan Decl. ¶ 15.) Koon Chun uses the mark "Koon Chun Sauce Factory" on all of its products. (Chan Decl. ¶ 17.) Koon Chun registered this mark with the United States Patent and Trademark Office ("PTO"), Registration No. 1,410,790. (Pl.'s 56.1 ¶ 4.)

Koon Chun sells all of its products to local trading companies in Hong Kong; the products are then distributed in other countries, including the United States. (Dfts.' Local Rule 56.1 Statement of Material Facts (hereinafter, "Dfts.' 56.1") ¶¶ 12-14.) During all relevant times, Koon Chun did not have any formal agreements with authorized dealers or distributors in the United States. (*Id.* ¶ 13.)

Star Mark is a New York corporation that imports, purchases, and sells food items to supermarkets, restaurant product distributors, and retailers. (Declaration of Jimmy Zhan in Opposition to Pl.'s Motion (hereinafter, "Zhan Decl.") ¶¶ 3, 8; Pl.'s Deposition of Jimmy Zhan, December 21, 2005, (hereinafter, "Zhan Dep.")) Great Mark is also a New York Corporation. (Zhan Dep.) Zhan is the President of both Star Mark and Great Mark. (*Id.*) Both corporations stored inventory and conducted business in a single building in Brooklyn, New York. (*Id.*)

Plaintiff's complaint also includes several unnamed defendants – "John Does 1 through 10" – and alleges, "[u]pon information and belief," that they were engaged in the manufacture, import, distribution, and/or

selling of counterfeit Koon Chun products.[7] (Compl. ¶ 7.)

2. The Allegedly Counterfeit Cans

In September 2003, according to plaintiff, Koon Chun employees discovered that allegedly counterfeit products bearing the Koon Chun mark were being sold in the United States. (Chan Decl. ¶ 19.) Subsequently, Koon Chun hired a private investigator, George Nolde ("Nolde"), to identify the source of the suspected counterfeit goods. (*Id.* ¶ 20.) In April 2004, Nolde purchased two cans of allegedly counterfeit Koon Chun hoisin sauce from defendants' warehouse in Brooklyn, New

---

[7] As an initial matter, the Court dismisses the claims against the unnamed defendants, "John Does 1 through 10." (Compl. ¶ 4.) Save for expert discovery regarding the damages issue, discovery has been completed in this case. Nevertheless, plaintiff has failed to identify any of the unnamed defendants, or to present any evidence demonstrating their involvement in the infringing activity. Moreover, the materials submitted by plaintiff in support of its motion for summary judgment fail to specify the role that the unnamed defendants played in the infringing conduct or to offer any indication that plaintiff will eventually be able to identify the unnamed defendants in the future. Accordingly, where "plaintiff [had] an opportunity to pursue discovery to identify the unknown defendants" but failed to do so, this Court adheres to the "general rule" that disfavors the use of "John Doe" to identify a defendant. *Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005) (quoting *Covington v. Warden of C-95*, No. 93 Civ. 1958 (FB), 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996)) (internal quotation marks omitted); *accord Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006); *see also Kemper Inc. Co., Inc. v. Federal Exp. Corp.*, 115 F. Supp. 2d 116, 125 (D.Mass. 2000), *aff'd*, 252 F.3d 509 (1st Cir.), *cert. denied*, 534 U.S. 1020 (2001) ("[F]ictitious parties must eventually be dismissed, if discovery yields no identities"); *cf. Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) (noting that dismissal of a complaint was not warranted because "discovery may be necessary before a defendant may be fully identified"). Here, plaintiff has not identified the unnamed parties nor suggested that there is any likelihood that the unnamed parties will eventually be identified. As such, the claims against the unnamed defendants are hereby dismissed without prejudice.

York.[8]  (Pl.'s 56.1 ¶¶ 7-10; Dfts.' Resp.

56.1 ¶ 7.)

Subsequently, on June 14, 2004, Koon Chun sought and obtained from this Court an Order of Seizure relating to all allegedly counterfeit goods held at defendants' warehouse.  (Pl.'s 56.1 ¶ 21.)  Pursuant to the Order of Seizure, Koon Chun seized 103 cases of allegedly counterfeit Koon Chun products from defendants' warehouse.  Each case contained six cans of hoisin sauce bearing the Koon Chun mark (hereinafter, "the June 2004 cans").  (Chan Decl. ¶ 31.)  Later, in April 2005, defendants permitted counsel for Koon Chun to take possession of an additional 680 cases of hoisin sauce also bearing the Koon Chun mark (hereinafter, "the April 2005 cans").  (Pl.'s 56.1 ¶ 25.)

[8] Defendants argue that there is a "chain of custody issue" with regard to the cans purchased by Nolde and, therefore, the cans should not be considered as evidence.  (Dfts.' Response to Pl.'s Local Rule 56.1 Statement (hereinafter, "Dfts.' Resp. 56.1") ¶ 7.)  The Court rejects that argument.  The chain of custody is "a method of authentication for physical evidence."  *United States v. Gelzer*, 50 F.3d 1133, 1140-41 (2d Cir. 1995). Pursuant to Rule 901 of the Federal Rules of Evidence, authentication seeks to establish that the evidence offered is what its proponent claims it to be, and must be shown by a preponderance of the evidence.  *See Gucci America, Inc. v. Ashley Reed Trading, Inc.*, No. 00 Civ. 6041 (RCC), 2003 WL 22327162, at *5 (S.D.N.Y. Oct. 10, 2003) (quoting *Gelzer*, 50 F.3d at 1140-41).  Here, plaintiff has provided evidence, through the declaration of Nolde ("the Nolde Declaration"), that Nolde purchased six cans of allegedly counterfeit Koon Chun hoisin sauce from defendants' warehouse and that he received a sales invoice for that purchase from defendant Star Mark.  (Declaration of Henry George Nolde in Support of Pl.'s Order to Show Cause (hereinafter, "Nolde Decl.") ¶¶ 13-16; Pl.'s 56.1 ¶ 7.)  Subsequently, Nolde delivered two of the cans to counsel for plaintiff.  (Nolde Decl. ¶ 19.)  Defendants argue that there exists an "authentication issue" as to all of the cans purchased by Nolde "based on the improper 'chain of custody.'"  (Dfts.' Resp. 56.1 ¶ 7.)  Specifically, defendants argue that plaintiff has failed to identify the Star Mark employee from whom Nolde purchased the allegedly counterfeit cans.  (*Id.*)

However, defendants' argument must fail because it does not raise any genuine issue as to the chain of custody, as set forth in the Nolde Declaration, of the two cans delivered to counsel for plaintiff.  Instead, defendants merely point to plaintiff's inability to identify the particular Star Mark employee who sold the cans to Nolde.  Accordingly, because plaintiff has provided evidence establishing the source of two of the allegedly counterfeit cans purchased by Nolde and defendants have failed to assert any evidence refuting the factual claims contained in the Nolde Declaration, the Court credits the Nolde Declaration and finds that there is no genuine issue as to the source of the two allegedly counterfeit cans purchased from defendants by Nolde and delivered to counsel for plaintiff.  *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 288 (S.D.N.Y. 2003) (granting summary judgment on trademark claims where plaintiff had "accounted for the chain of custody of the items [purchased] from the sellers" and provided to plaintiff's expert).

### 3. The Differences Between Koon Chun Cans and the Allegedly Counterfeit Cans

Koon Chun sells its genuine hoisin sauce in five-pound cans (hereinafter, "Koon Chun cans"). These cans have a unique trade dress, consisting of the following characteristics: (1) the Koon Chun mark; (2) a label design featuring blue trapezoidal-shaped boxes with white borders set against a yellow background; and, (3) for Koon Chun cans produced prior to January 2004, a six-digit time stamp on the lid of the can providing, in sequence, the year-day-month and hour-minute-second that the can was produced.[9] (Chan Decl. ¶¶ 8, 9, 26; Dfts.' Resp. 56.1 ¶ 5.) Koon Chun uses an "inkjet machine" to print the time stamp on the cans in a specific font. (Pl.'s 56.1 ¶ 12.)

All of the allegedly counterfeit hoisin sauce cans obtained from defendants (hereinafter, "the defendants' cans") are nearly identical to those of the Koon Chun cans. (Pl.'s 56.1 ¶¶ 8, 21, 25.) Both products bear the Koon Chun trademark, the same coloring and design pattern on the label, and time stamps on the lids of the cans. (Pl.'s 56.1 ¶¶ 8, 9, 11, 22, 26, 29.) However, the hoisin sauce cans obtained from defendants' warehouse possess certain characteristics that distinguish them from genuine Koon Chun products.[10] These distinguishing

characteristics include (1) the time stamps on defendants' cans, (2) the labels on the April 2005 cans handed over by defendants, and (3) the packaging of boxes containing defendants' cans.[11]

---

as set forth above, the Court rejects defendants' objection and finds that the Chan Declaration was made on the basis of personal knowledge. Apart from the personal knowledge objection, defendants fail to point to any admissible evidence refuting Chan's statements regarding the appearance and packaging of the genuine Koon Chun products and defendants' cans. Accordingly, absent any objections by defendants on grounds *other than* Chan's supposed lack of personal knowledge, the Court treats as uncontroverted the statements in the Chan Declaration regarding the distinguishing characteristics of genuine Koon Chun cans from those cans obtained from defendants' warehouse. Of course, notwithstanding the factually uncontroverted portions of the Chan Declaration, plaintiff's motion may still be denied. *See 24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 429 F.3d 39, 46 (2d Cir. 2005) (noting that "summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' . . . the non-movant is not required to rebut an insufficient showing") (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140-141 (2d Cir. 2003)).

[11] At oral argument on the instant motions, upon consent of counsel for defendants, plaintiff presented to the Court three of defendants' cans and one Koon Chun can. Plaintiff showed the cans to the Court and pointed out the differences described herein between defendants' cans and Koon Chun cans. Although these cans are now part of the record in this case, the Court notes that plaintiff has offered evidence in its moving papers – including uncontroverted descriptions of defendants' cans and Koon Chun cans, and the respective boxes containing those cans, as well as photographs of all the cans and boxes at issue – that provides, by itself, a sufficient basis to rule on plaintiff's motion.

---

[9] For example, the time stamp on a can produced on January 23, 2003 at 8:10:30 a.m. would appear as "032301" set above "081030."

[10] In their 56.1 counterstatement, defendants object to the statements contained in the Chan Declaration relating to the appearance and packaging of both Koon Chun cans and defendants' cans solely on the ground that the statements were not made on the basis of personal knowledge, as required by Rule 56(e). However,

### a. Time Stamps

The time stamps on most of defendants' cans, including the Nolde cans, do not incorporate the year-day-month scheme used by Koon Chun. (Pl.'s 56.1 ¶¶ 17-18.) Instead, most of defendants' cans employ either a year-month-day sequence or an unintelligible sequence of numbers. (Pl.'s 56.1 ¶ 17, 22, 23, 29.)

In addition, many of the time stamps on defendants' cans, including the Nolde cans, were identical. For instance, *every* can handed over by defendants in April 2005 bears the *same* unintelligible time stamp: "043905." (Dfts.' 56.1 Statement of Additional Uncontroverted Facts (hereinafter, "Dfts.' Add'l 56.1") ¶ 51.) There is no 39th month or day, and Koon Chun did not use the trademark or trade dress at issue in 1939. Similarly, many of the cans seized from defendants in June 2004 had identical time stamps. (Pl.'s 56.1 ¶ 23.) By contrast, genuine Koon Chun cans rarely have identical time stamps because it is difficult for two cans to pass through the Koon Chun stamping machine at exactly the same time. (*Id.* ¶ 14.)

Moreover, the fonts appearing in the time stamps on the Nolde Cans, the June 2004 cans and the April 2005 cans obtained from defendants, respectively, are different than the font used for time stamps on genuine Koon Chun cans. (*Id.* ¶¶ 23-24.)

### b. Labels on the April 2005 Cans

The labels on all Koon Chun cans are identical to one another. (*Id.* ¶ 33.) The labels on the April 2005 cans obtained from defendants, however, differ from the labels on Koon Chun cans. (*Id.* ¶ 34.) The lettering on the labels on the April 2005 cans differs in color and appearance from the lettering on the labels on Koon Chun cans.[12] (*Id.* ¶¶ 35-37.)

### c. Boxes Containing Defendants' Cans

Koon Chun packages its hoisin sauce cans in cardboard boxes. These boxes are assembled by a machine that applies lines of glue to the side-flaps of the boxes. (*Id.* ¶ 40.) As such, when a box of Koon Chun cans is opened, lines of glue can be seen on the side flaps of the opened box. (*Id.* ¶ 41.) By contrast, lines of glue cannot be seen on opened boxes of defendants' cans; rather, the side flaps are marked by a smear of glue. (*Id.* ¶¶ 40-41; Dfts.' Resp. 56.1 ¶ 42.)

### 4. The Sources of Defendants' Cans

Defendants purchased the allegedly counterfeit cans from two suppliers in Hong Kong: Tin Shing Trading Company ("Tin Shing") and New United Trading Company ("New United"). (Pl.'s 56.1 ¶ 44.) Between March 2002 and June 2004, defendants sold at least 4,590 cases of the allegedly counterfeit cans to fifty-five customers. (Dfts.' 56.1 ¶¶

---

[12] In their 56.1 counterstatement, defendants object to plaintiff's assertions regarding the appearance of the April 2005 cans "on the grounds as stated in Paragraph 26 herein." (Dfts.' Resp. 56.1 ¶¶ 35-37.) However, paragraph 26 of defendants' counterstatement states that "[d]efendants object to the statement made in Paragraph 26 on the grounds as stated in Paragraph 26 herein." Obviously, the Court cannot derive any objection to plaintiff's assertions from defendants' self-referential counterstatement. Nevertheless, the Court has examined the entirety of defendants' counterstatement, their statement of additional facts, and their opposition brief and finds that defendants fail to present any genuine issue as to plaintiff's description of the April 2005 cans – that is, other than the "personal knowledge" objection discussed *supra*.

16-17; Pl.'s Statement of Facts in Opposition to Dfts.' Motion (hereinafter, "Pl.'s Opp. 56.1") ¶¶ 16-17.)

The parties dispute the inferences to be drawn from two instances of correspondence between Jimmy Zhan, Star Mark and Great Mark's President, and the suppliers from whom defendants purchased the allegedly counterfeit cans. First, on January 15, 2003, Zhan sent a fax to New United and to another supplier in China, telling them that "the taste" of the hoisin sauce in the allegedly counterfeit cans "must be similar," that it "would be good" if the boxes containing the cans were made "harder," and that "[i]t would be better if the 'nutrition facts table'" was printed on the cans. (Pl.'s 56.1 ¶ 45; Dfts.' Add'l 56.1 ¶¶ 92-104.) Second, on August 4, 2003, Zhan faxed a purchase order to New United. The order did not include a request for hoisin sauce, but included a note from Zhan, stating that: "I understand this price will be difficult to do for both of us, but for the facilitation of the future mass import of 5lb cans of Hoisin Sauce, then both of us need to make some sacrifice." (Coppola Decl. Exh. 8.)

Defendants knew that the allegedly counterfeit cans purchased from Tin Shing and New United were manufactured in mainland China, and that those cans were less expensive than the genuine Koon Chun cans defendants had previously purchased from the same suppliers. (Dfts.' Add'l 56.1 ¶¶ 76, 79, 80; Pl.'s 56.1 ¶ 46.) However, according to Zhan, the price of the allegedly counterfeit cans was only one or two dollars lower than the price of the Koon Chun cans defendants had previously purchased. (Dfts.' Add'l 56.1 ¶ 79.)

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©; *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## B. APPLICATION

### 1. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment against defendants on plaintiff's First, Second, and Third Claims for relief, which allege (1) infringement of plaintiff's registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); (2) counterfeiting of plaintiff's registered trademark in violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116; and (3) infringement of trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff also seeks permanent injunctive relief, damages, and attorneys' fees.

### a. First and Third Claims for Relief[13]

Section 32 of the Lanham Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademark. 15 U.S.C. § 1114(1)(a). Section 43(a) prohibits similar conduct, though it is not limited to registered trademarks and "deems liable for false designation of origin '[a]ny person who . . . uses in commerce any container for goods . . . name, symbol, device . . . or any false designation of origin . . . which is likely to cause confusion." *Danone Asia*, 2006 WL 845573, at *4 (quoting 15 U.S.C. § 1125(a)).

"A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993)." *Virgin Enterp. Ltd. v.*

---

[13] The analysis for trademark infringement under New York common law is subsumed within the analysis of the Lanham Act claim. *See, e.g., Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 297-298 (S.D.N.Y. 2002); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F. Supp. 1188, 1193 (S.D.N.Y. 1983) ("[T]he essential elements of state . . . trademark infringement claims are but a restatement of unfair competition under the Lanham Act.") (internal citation omitted); *C.V. Starr & Co., Inc. v. American Intern. Group, Inc.*, No. 06 Civ. 2157 (HB), 2006 WL 2627565, at *2 (Sept. 14, 2006). Therefore, the Court will consider plaintiff's motion as seeking summary judgment on their Seventh Claim for Relief as well.

*Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). First, the Court looks to see whether the plaintiff's mark merits protection under the Act, and second, whether defendant's use of a similar mark is likely to cause consumer confusion. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006) (citing *Gruner*, 991 F.2d t 1075). In applying this test, the Court notes that "[i]t is well established that wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and that good faith is no defense." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004) (quoting *Gucci America, Inc v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991)); *see Apollo Distrib. Co. v. Apollo Imports Inc.*, 341 F. Supp. 455, 458 (S.D.N.Y. 1972) (finding that "no intent to deceive . . . need be shown on the part of the defendant").

First, in this case, plaintiff's certificate of registration with the PTO for the Koon Chun mark is prima facie evidence that the "mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). Here, it is undisputed that plaintiff's mark is valid and protected under the Lanham Act.

Second, to determine the likelihood of confusion, courts generally apply the eight-factor *Polaroid* test evaluating

(1) the strength of the plaintiff's mark; (2) the similarity of plaintiffs and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers.

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 742-43 (2d Cir.1998) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961)). However, in cases involving counterfeit marks or goods, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Duty Free Apparel*, 286 F. Supp. 2d at 287 ("Indeed, confusing the customer is the whole purpose of creating counterfeit goods."); *see Topps Co., Inc. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) ("[W]here the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors."). Thus, in this case, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place – that is, whether the items at issue here are, in fact, counterfeit, and whether [d]efendants sold those items." *Duty Free Apparel*, 286 F. Supp. 2d at 287. Here, there is no dispute as to whether defendants sold the items at issue. Accordingly, the Court need only determine if there is a genuine issue as to whether defendants' cans are counterfeit.

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Other than the objection to the Chan Affidavit considered and rejected by the Court, defendants raise no objection to plaintiff's assertion that defendants' cans are "virtually

identical" to the Koon Chun cans. (Dfts.' Opp. 56.1 ¶ 31; Pl.'s 56.1 ¶ 31.) Moreover, plaintiff has demonstrated that Koon Chun cans *uniformly* bear a specific time stamp sequence and font, a specific label design, and a specific type of packaging, and that many of defendants' cans, including the Nolde cans, deviate from some or all of these uniform features. Defendants have failed to produce evidence refuting plaintiff's factual claims regarding the differences between defendants' cans and the Koon Chun cans. Thus, the Court finds that the only conclusion that a reasonable factfinder could reach is that defendants' cans are counterfeits and, therefore, plaintiff is entitled to summary judgment on its First and Third Claims for Relief.

As a threshold matter, defendants respond to plaintiff's motion by arguing that the Chan Declaration and documents offered in support of plaintiff's motion cannot be considered by the Court. However, as discussed *supra*, plaintiff has established that the Chan Declaration is based on personal knowledge and that the documents are admissible business records; accordingly, those items may be considered by the Court.

Defendants also argue that, even if plaintiff's evidence is admissible, genuine issues of material fact remain as to whether defendants' cans are counterfeit. Accordingly, defendants assert that some of the cans obtained from defendants pursuant to the Court's Order of Seizure actually conform to the year-day-month sequence used in Koon Chun's time stamp scheme. However, defendants still fail to refute the other evidence distinguishing those cans from Koon Chun cans – specifically, the time stamp font and the packaging of Koon Chun cans.

Yet, even assuming *arguendo* that some of the cans seized from defendants are genuine Koon Chun cans, defendants have failed to refute plaintiff's *prima facie* case as to defendants' liability under the Lanham Act. "The plain language of the relevant statutes[ – 15 U.S.C. §§ 1114(1), 1125(a) –] does not require that the plaintiff prove that a defendant committed the infringement *in any particular amount*." *Duty Free Apparel*, 286 F. Supp. 2d at 290 (emphasis added). Instead, the "amount of harm that the infringer inflicts goes to the amount of damages rather than to [the infringer's] liability for damages; the trademark laws do not excuse modest infringements by petty pirates." *Id*. (quoting *General Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989)). Here, plaintiff seeks summary judgment with respect to liability, not damages. On the issue of liability, plaintiff has provided evidence from which a reasonable factfinder could only conclude that, at the very least, defendants sold two counterfeit cans to Nolde and were offering for sale other counterfeit cans. Accordingly, the Court finds that there is no genuine issue as to whether defendants were selling counterfeit cans, in violation of the prohibitions against trademark and trade dress infringement.

Defendants also respond to plaintiff's evidence by offering unsupported speculation: defendants suggest that it is "not unreasonable to infer" that Koon Chun has undisclosed factories in mainland China that produced the allegedly counterfeit cans, and that plaintiff "subcontracted companies in China," including New United and Tin Shing, to repackage genuine Koon Chun hoisin sauce in counterfeit cans.[14] (Dfts.' Mem. at 9-12.)

---

[14] Defendants also assert that plaintiff has failed to perform a "laboratory test" demonstrating that the *contents* of defendants' cans differs from genuine

Defendants have failed to produce any affirmative evidence in support of these claims or to offer evidence, either through an expert or through a reasonable explanation of the origins of defendants' cans, from which a factfinder could reasonably infer that defendants' cans are actually authentic Koon Chun products. The Court notes that, under the standards set forth above, to defeat summary judgment, the non-movant must produce "specific facts," Fed. R. Civ. P. 56(e), or "some hard evidence in opposition" to plaintiff's *prima facie* case. *Duty Free Apparel*, 286 F. Supp. 2d at 288 (internal citation omitted). "The mere existence of a scintilla of evidence in support of the [defendants'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]." *Anderson*, 477 U.S. at 252. "Mere speculation or 'metaphysical' possibilities alone do not suffice to counter specific evidence." *Duty Free Apparel*, 286 F. Supp. 2d at 289. Here, defendants raise no genuine issue as to any material fact.[15] Accordingly, the Court finds that plaintiff's motion is

granted as to its trademark and trade dress claims.

### b. Fourth Claim for Relief

An unfair competition claim under Section 43(a) of the Lanham Act "is conceptually broader than trademark protection . . . [and] extends not only to the name of the good, but to its overall presentation, or 'dress.'" *Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 904 F. Supp. 1409, 1416-17 (S.D.N.Y. 1995); *see Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999) ("Unfair competition provides an additional degree of protection above that provided by trademark and trade dress law. . . . [T]rademark and trade dress infringement may be the basis for a claim of unfair competition.") Thus, as with claims for trademark and trade dress infringement, "the central inquiry" is the likelihood of confusion as to the source of the goods in question. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000). Accordingly, because the Court found, *supra*, that defendants used counterfeit goods in commerce and, therefore, a likelihood of confusion exists, plaintiff is also entitled to summary judgment on its Fourth Claim of Relief alleging unfair competition under the Lanham Act.

### c. Second Claim for Relief

Plaintiff also alleges that defendants' infringing activity "constitutes use of a counterfeit in violation of 15 U.S.C. § 1116, which prohibits the use in commerce of a counterfeit of a trademark." (Compl. ¶ 66.) However, the Court notes, *sua sponte*, that 15 U.S.C. § 1116 does not provide an independent cause of action for trademark violations. The statute provides, in relevant part, that:

---

Koon Chun cans. The Court finds this assertion to be irrelevant to the claims alleged in this case. Even assuming *arguendo* that the defendants' cans contained genuine Koon Chun hoisin sauce, it would not affect defendants' liability for using *counterfeit cans* in commerce.

[15] At oral argument on the instant motions, counsel for defendants was asked to present *any* affirmative evidence to refute plaintiff's case for summary judgment. Initially, counsel responded by speculating, once again, about the existence of an undisclosed factory owned by plaintiff in mainland China. Yet, following a reminder from the Court that unsupported speculation was insufficient to refute plaintiff's case, counsel for defendants could not support the claim with affirmative evidence and could not point to any evidence to refute the overwhelming evidence of infringing conduct by defendants.

In the case of a civil action arising under section 1114(1)(a) . . . with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, *the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation* and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

15 U.S.C. § 1116(d)(1)(A) (emphasis added).

Plaintiff is not currently seeking an *ex parte* seizure order. Instead, plaintiff moves for summary judgment on its claim that defendants violated trademark laws by engaging in counterfeiting. "Presumably, plaintiff[] seek[s] a finding that defendants have engaged in counterfeiting *as defined by* [15 U.S.C. § 1116(d)] for the purposes of being awarded damages pursuant to 15 U.S.C. § 1117.[16] *Danone Asia*, 2006 WL 845573, at

*6. Of course, the Court has already found, *supra*, that defendants engaged in counterfeiting in violation of the Lanham Act.

Therefore, because no independent cause of action exists under § 1116, plaintiff's motion for summary judgment as to this claim is denied, and the claim must be dismissed.

### d. Willfulness

Plaintiff also moves for summary judgment on the issue of defendants' allegedly willful violation of the Lanham Act. Under existing Second Circuit precedent, "before the infringer's profits are recoverable by way of an accounting," the plaintiff "must prove that an infringer acted with willful deception" and establish a "general right to damages." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539-40 (2d Cir. 1992)) (internal quotation marks omitted).[17] In conducting this

---

[16] 15 U.S.C. § 1116(d)(1)(B) provides that "the term 'counterfeit mark' means . . . a counterfeit of a mark that is registered on the principal register in the [PTO] for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such marks was so registered." 15 U.S.C. § 1117(b) provides: "[i]n assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title . . . that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d)

of this title), in connection with the sale, offering for sale, or distribution of goods or services. Moreover, 15 U.S.C. § 1117(c) provides: "[i]n a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services."

[17] In 1999, Congress amended the damages section of the Lanham Act. *See* 15 U.S.C. § 1117(a) (as amended, providing that plaintiff can recover the defendant's profits upon "a violation under section 1125(a) . . . or a willful violation under section 1125(c)"). The amendment may "raise[] a question as to the continuing viability of the Second Circuit precedent requiring a showing of willfulness as a predicate to recovery" for a violation of section 1125(a). *Johnson & Johnson*

inquiry for claims asserted under the Lanham Act, courts in the Second Circuit have incorporated the standard for willfulness applied to copyright claims asserted under 17 U.S.C. § 504. *See, e.g., Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW), 2005 WL 1654859, at *10 (S.D.N.Y. July 13, 2005). Accordingly, "[t]he standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Id.* (applying the willfulness standard from a copyright case, *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999), to claims asserted under the Lanham Act); *see, e.g., Phillip Morris USA Inc. v. Marlboro Express*, No. 03 Civ. 1161 (CPS), 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 457 n.13 (S.D.N.Y. 2005). Moreover, the Court acknowledges that "caution must be exercised in granting summary judgment when state of mind is in issue." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 125 (2d Cir. 2001) (quoting *Res. Developers, Inc. v. Statue of*

*Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991)); *see EMI Catalogue P'ship*, 228 F.3d 56, 61 (2d Cir. 2000) ("Some caution must be observed in granting [summary judgment] in a suit alleging unfair competition under the Lanham Act because defendant's intent is at issue.").

In *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, the Second Circuit applied the willfulness standard cited above to a claim for copyright infringement. 413 F.3d 257, 263-64 (2d Cir. 2005). The court found that "summary judgment on the issue of willfulness [is] inappropriate" where defendants "dispute[] the inferences to be drawn" from the "evidence suggesting constructive knowledge of infringement." *Id.* Similarly, in this case, plaintiff fails to offer conclusive evidence of defendants' knowing infringement, and defendants dispute the inferences to be drawn from the evidence suggesting willfulness. Accordingly, for the reasons that follow, plaintiff's motion for summary judgment on the issue of willfulness is denied.

Plaintiff points to several acts and omissions of defendants and asks the Court to infer that defendants had knowledge of, or were "willfully blind" to the infringing activity. Defendants respond by offering opposing inferences to be drawn from the same evidence.

First, plaintiff characterizes the January 15, 2003 fax from Zhan to the suppliers of defendants' cans as a request for the suppliers to improve the quality of the counterfeit cans so as to better imitate genuine Koon Chun cans. Defendants argue that Zhan was reporting customer complaints and his own concerns to suppliers that did business with Koon Chun.

---

*Vision Care, Inc., v. CIBA Vision Corp.*, No. 04 Civ. 7369 (LTS), 2006 WL 2128785, at *4 n.2 (S.D.N.Y. July 28, 2006); *see Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW), 2005 WL 1654859, at *10 (S.D.N.Y. July 13, 2005) (finding that, as amended, "the plain language of the statute indicates that willfulness is a prerequisite only when recovery of profits is sought for a violation of section 1125(c)"); *but see Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00 Civ. 5304 (SJ), 2004 WL 896952, at *9 (E.D.N.Y. March 26, 2004) ("A finding of defendant's 'willful deceptiveness is a prerequisite for awarding profits.'") (quoting *George Basch Co.*, 968 F.2d at 1539-40). This issue was not briefed by the parties and need not be decided at this juncture because, as noted *infra*, the Court is referring the issue of damages to Magistrate Judge Gold.

Second, plaintiff asserts that the August 4, 2003 note from Zhan to New United addressing future orders of hoisin sauce cans is evidence of defendants' search for counterfeit cans. Defendants argue that Zhan was simply negotiating the price for future orders of what it believed to be genuine Koon Chun cans.

Third, plaintiff asserts that Zhan knew that Koon Chun did not manufacture any of its products outside of Hong Kong and that the counterfeit cans were imported from mainland China. Therefore, according to plaintiff, Zhan should have known that the counterfeit cans were not genuine Koon Chun products. Defendants respond by pointing to evidence in the record showing that Zhan believed Koon Chun products may have been repacked into containers in mainland China. (Coppola Decl. Exh. 12.)

Fourth, plaintiff asserts that Zhan should have known that the cans at issue were counterfeit because he knew that they were cheaper than the Koon Chun cans defendants had previously purchased from the same suppliers. Defendants, however, point to Zhan's testimony that the slight difference in price – "a dollar or two lower" – did not arouse his suspicion, especially where he believed that the cans were being manufactured by Koon Chun in China, where the cost of labor is less than that in Hong Kong. (Coppola Decl. Exh. 11.)

Fifth, plaintiff asserts that Zhan should have known that defendants' suppliers were providing counterfeit goods based upon those suppliers' previous conduct – specifically, the suppliers' previous sale of allegedly infringing items to defendants. Even assuming *arguendo* that plaintiff could establish defendants' knowledge of prior counterfeiting activity by their suppliers, it would not be conclusive on the issue of willfulness in this case. As noted, in the past, defendants had also purchased genuine Koon Chun cans from the suppliers at issue.

Finally, plaintiff points to the credit that defendants' suppliers extended to defendants following the seizure of the counterfeit cans, and asks the Court to infer from this evidence that defendants and their suppliers were acting together in a counterfeiting enterprise. However, although both parties present arguments on the issue, the Court finds no evidence in the record regarding the credit extended to defendants by their suppliers. Accordingly, the Court declines to draw any inferences therefrom.

In sum, a reasonable factfinder making credibility judgments about the parties' respective positions might conclude that the proffered evidence reveals that defendants willfully infringed or recklessly disregarded the possibility of infringement. However, summary judgment is inappropriate where, as here, the Court may not make credibility judgments, plaintiff fails to offer conclusive evidence regarding defendants' intent, and defendants deny their knowledge of the infringing activity and dispute the inferences to be drawn from evidence suggesting that defendants willfully infringed or recklessly

disregarded the possibility of infringement.[18]

## 2. Defendants' Motion for Summary Judgment

Defendants seek to preclude plaintiff from recovering its profits lost as a result of the infringing activity. Defendants' motion relies upon a prior ruling by Magistrate Judge Steven M. Gold, who oversaw discovery in this case. On July 28, 2005, Magistrate Judge Gold denied a motion by defendants to compel production of certain records belonging to Koon Chun. (Declaration of Anthony A. Coppola in Opposition to Dfts.' Motion (hereinafter, "Coppola Opp. Decl.") Exh. 2.) Specifically, defendants had sought information regarding Koon Chun's sales in the United States; plaintiff opposed the request on the basis that such information was proprietary. (*Id.*) Pursuant to Magistrate Judge Gold's ruling, plaintiff was permitted to withhold its sales records from defendants on the condition that plaintiff would not seek lost profits damages on the basis of a "claim, through a form of testimony or otherwise, that [plaintiff] actually suffered a decline in sales volume, lost customers or otherwise." (*Id.*) In a letter to Magistrate Judge Gold dated August 11, 2005, plaintiff stated that it would "not provide any total U.S. sales information to the defendants" and, accordingly, would "not rely on any evidence of lost total U.S. sales," but would nevertheless "maintain its contention of lost sales and lost profits as theories of damages recovery." (Li Decl. Exh. R.)

Defendants now ask this Court to find that, as a matter of law, plaintiff cannot recover damages for lost profits absent evidence of Koon Chun's sales in the United States. For the reasons that follow, defendants' motion is denied.

Section 35(a) of the Lanham Act governs claims for monetary relief made by plaintiffs who have established a trademark violation. It provides:

> the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a). Pursuant to Section 1117(a)(2), plaintiff's damages "may include compensation for . . . lost sales or revenue."

---

[18] Plaintiff also asserts a Sixth Claim for Relief alleging unfair competition under New York common law. "To prevail on a claim for unfair competition under New York common law, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith." *Omicron Capital, LLC. v. Omicron Capital, LLC.*, 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006) (internal quotation marks and citations omitted); *see Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). In this case, plaintiff has failed to move for summary judgment on that claim or, as discussed *supra*, to present sufficient evidence of defendants' bad faith, or willfulness, necessary to support summary judgment on an unfair competition claim under New York law. Accordingly, to the extent that plaintiff's motion could be considered to seek summary judgment on its Sixth Claim for Relief, the motion is denied. The Court also notes that plaintiff does not seek summary judgment as to its Fifth Claim for Relief alleging a violation of New York's anti-dilution law, Section 360-l of the New York General Business Law. Because the issue has not been briefed by the parties, the Court declines to consider whether plaintiff's mark is an "extremely strong mark[]" which would entitle plaintiff to injunctive relief under New York's anti-dilution law. *Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 367 (S.D.N.Y. 2003).

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hillfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996) (citing *Rest. (Third) of Unfair Competition* § 36 cmt. i (1995)).

Defendants argue that "[p]laintiff's claim for lost sales or profits [is] without any proof of actual concrete injury caused by [d]efendants." (Dfts.' Reply Mem. at 10.) However, at this time, plaintiff has not even had the opportunity to show what damages, if any, were caused by defendants' infringing conduct. As noted, plaintiff's motion seeks summary judgment on the issue of liability, not damages. Moreover, at oral argument on the instant motions, defendants conceded that expert discovery on the issue of damages was still ongoing and that such evidence had yet to be presented to the Court. As such, the Court has not had the opportunity to review the evidence underlying plaintiff's claim for damages and cannot conclude whether plaintiff has, in fact, demonstrated whether it is entitled to recovery of profits lost due to the infringing conduct. Accordingly, because plaintiff's entitlement to recovery of lost sales or profits from defendants remains a disputed issue, defendants' motion is denied.

However, although the Court declines, at this juncture of the case, to bar plaintiff from seeking any form of recovery set forth in 28 U.S.C. § 1117(a), it notes that damages for lost profits "must be demonstrated by the plaintiff with specificity," and that the Court may engage in only *limited* speculation in calculating the amount of damages. *The Apollo Theater Found., Inc. v. Western Intern. Syndication*, No. 02 Civ. 10037 (DLC), 2005 WL 1041141, at *11 (S.D.N.Y. May 5, 2005); *see Burndy Corp v. Teledyne Indus., Inc.*, 748 F.2d 767, 771 (2d Cir. 1984); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002). "Lost profits are calculated by estimating revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue." *GTFM, Inc.*, 215 F. Supp. 2d at 305. Therefore, because plaintiff's evidence of damages must not include, pursuant to the magistrate judge's ruling, evidence relating to any decline in sales volume in the United States suffered by Koon Chun, plaintiff must provide some other basis from which the Court could estimate revenue lost due to the infringing conduct.

### 3. Plaintiff's Request for Litigation Expenses and Attorneys' Fees

Plaintiff also moves, pursuant to 28 U.S.C. § 1927, for reimbursement of costs and fees incurred in litigating defendants' allegedly "unreasonable and vexatious" motion. (Pl.'s Reply Mem. at 20.) "Section 1927 authorizes the imposition of sanctions only 'when there is a finding of conduct constituting or akin to bad faith.'" *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)). As such, an award under Section 1927 is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (quoting *In re 60 East 80th Street Equities*, 218 F.3d 109, 115 (2d Cir. 2000)). The Court is not persuaded that defendants' motion was so completely without merit as to support a finding of bad faith on the part of counsel for defendants. Therefore, plaintiff's request for reimbursement of costs and fees under Section 1927 is denied.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff's motion is granted as to its First, Third, Fourth, and Seventh Claims for Relief. Plaintiff's motion is denied as to its Second and Sixth Claims for Relief. The Second Claim for Relief is dismissed. Defendants' motion for summary judgment is denied in its entirety. Plaintiff's motion for reimbursement of costs and fees is also denied. This matter is referred to Magistrate Judge Gold to conduct an inquest and to issue a Report and Recommendation on damages.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 8, 2007
Central Islip, NY

* * *

The attorney for plaintiff is Anthony A. Coppola, Esq., of Abelman, Frayne & Schwab, 150 East 42nd Street, New York, New York 100017-5612. The attorney for defendants is Bing Li, Esq., 1350 Broadway, Suite 10001, New York, New York 10018-0947.