UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KOON CHUN HING KEE SOY & SAUCE
FACTORY, LTD.,

                           Plaintiff,

                                                          MEMORANDUM &
            -against-                                     ORDER
                                                          04-CV-2293 (SMG)

STAR MARK MANAGEMENT, INC.,
GREAT MARK CORP., and YI Q. ZHAN,

                           Defendants.
----------------------------------------------------------X
Gold, S., *United States Magistrate Judge*:

## INTRODUCTION

Plaintiff, Koon Chun Hing Kee Soy & Sauce Factory, Ltd., brings this action for trademark

infringement against defendants Star Mark Management, Inc., Great Mark Corp. and Yi Q. Zhan,

based upon defendants' sales of counterfeit versions of plaintiff's hoisin sauce.   On January 8,

2007, the Honorable Joseph F. Bianco found defendants liable for trademark and trade dress

infringement, 15 U.S.C. §§ 1114(1) and 1125(a), and unfair competition, 15 U.S.C. § 1125(a), but

denied plaintiff's motion for summary judgment on the question of whether defendants' violation

of the Lanham Act, 15 U.S.C. § 1051 et seq., was willful.   *Koon Chun Hing Kee Soy & Sauce*

*Factory, Ltd. v. Star Mark Management*, 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007).   Thereafter,

the parties consented to have the case assigned to me for all purposes pursuant to 28 U.S.C.

§ 636(c)(1) for a determination of an appropriate award of damages and injunctive relief.

After presiding over a bench trial and receiving post-trial memoranda, I issued a

Memorandum & Order ("M&O") awarding plaintiff $82,964.40 in damages pursuant to 15 U.S.C.

§ 1117.   I calculated this amount by trebling defendants' counterfeiting profits of $27,654.80.   I

concluded that trebling of damages was mandatory because defendants' infringing actions were

willful.  M&O 12.  As a result of defendants' willfulness, an award of plaintiff's reasonable attorney's fees was also mandatory.  M&O 23.

In awarding damages, I denied plaintiff's application for an award of its lost profits because I determined that plaintiff had failed to establish with sufficient specificity that it did in fact lose sales as a result of defendants' infringement.  M&O 10-12.  I directed the parties to meet and confer in an effort to agree on reasonable attorney's fees and costs and on a permanent injunction, M&O 25, but the parties were unable to reach agreement.[1]

Plaintiff now moves for reconsideration of my decision not to award damages based upon its claim of lost sales, contending that I overlooked certain legal principles and evidence. Plaintiff's Motion for Reconsideration dated June 5, 2009 ("Pl. Mem.").  In addition, having failed to reach agreement with defendants, plaintiff has submitted documentation in support of an award of its fees and costs.  Plaintiff's Motion for Attorney's Fees and Costs dated June 15, 2009 ("Pl. Fee Mem.").  Finally, plaintiff seeks an award of pre-judgment interest.  Pl. Fee Mem.

For the reasons that follow, plaintiff's motion for reconsideration with respect to its claim for damages based upon lost sales is denied.  Plaintiff is awarded $783,330.20 in fees and $113.957.71 in costs.  Finally, plaintiff's motion for pre-judgment interest is granted as to actual damages but denied as to attorney's fees and costs.

## DISCUSSION

I.    *Motion for Reconsideration*

A party moving for reconsideration must "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

---

[1] I have already awarded plaintiff injunctive relief.  *See* Permanent Injunction dated June 26, 2009.

A motion for reconsideration may not, however, "be used as a vehicle to advance new theories or adduce new evidence in response to the court's rulings." *Chin v. U.S. Postal Service*, 2009 WL 3174144, at *1 (E.D.N.Y. Oct. 1, 2009) (internal quotations and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied." *Shrader*, 70 F.3d at 257. Moreover, a motion to reconsider should be denied "where the moving party seeks solely to relitigate an issue already decided." *Id.*

Plaintiff first argues that it was error not to recognize a presumption that a sale made by the "infringing party is presumed to be a sale lost to the trademark owner," Pl. Mem. 4, and that the burden of proof should have been placed on defendants to disprove plaintiff's claim of lost sales. Pl. Mem. 3. Plaintiff also contends that I failed to consider evidence of its lost sales that was properly admitted at trial. Pl. Mem. 5-8.

A. *Presumption of Lost Sales*

In its post-trial brief, plaintiff argued that every sale by defendants of counterfeit hoisin sauce was a sale lost by the plaintiff. Plaintiff's Post-Trial Memorandum of Law dated Jan. 14, 2008, 12. In my M&O, I rejected plaintiff's argument, finding that plaintiff failed to present sufficient evidence of its lost sales to support an award of damages on this basis. M&O 10-12. Plaintiff now cites to legal authority purportedly establishing a "one-to-one presumption" of lost sales. Pl. Mem. 4. In particular, plaintiff relies on *Ford Motor Co. v. Kuan Tong Indus. Co., Ltd.*, for the proposition that "a sale made by the infringing party is presumed to be a sale lost to the trademark owner." 697 F. Supp. 1108, 1109 (N.D. Cal. 1987).[2] In addition, plaintiff cites a

---

[2] Plaintiff also cites *Aris Isotoner Inc. v. Dong Jin Trading Co. Inc.*, 1989 WL 236526, at *11 (S.D.N.Y. Sept. 22, 1989), for the same proposition. The discussion in *Aris Isotoner* that plaintiff relies upon, however, relates to the court's calculation of pre-judgment interest, not damages. Moreover, in the very same paragraph cited by plaintiff, the *Aris Isotoner* court observed that, particularly when the infringing goods are cheaper than genuine merchandise, "a sale to defendant does not necessarily represent a loss to the plaintiff."

decision in its favor awarding damages on the basis of such a one-to-one presumption of lost sales where no contradictory evidence was presented by the defendants. *Koon Chun Hing Kee Soy & Sauce Factory Ltd. v. Eastimpex*, 2007 WL 328696, at *6 (N.D. Cal. Feb. 2, 2007).

Plaintiff's argument fails for multiple reasons. First, even if its legal argument were meritorious, I would deny plaintiff's motion on the ground that it is an attempt to relitigate an issue already decided by supporting its position with case law not previously put before the court. *Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 271 (S.D.N.Y. 2001) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court.") (citing *Shrader*, 70 F.3d at 257). Plaintiff did not cite *Ford Motor* in its post trial memorandum or reply, and cited *Aris Isotoner* and *Koon Chun* only for different propositions than those advanced here.

Furthermore, after reviewing the additional legal authorities cited by plaintiff, I conclude that applicable precedent does not require application of the one-to-one presumption plaintiff invokes. I am, therefore, not persuaded to change my conclusion that an award of profits from plaintiff's lost sales based on the volume of defendants' counterfeit sales would be too speculative in this case for the same reasons set forth in my M&O. M&O 10-12.

The *Ford* and *Koon Chun* cases that plaintiff cites rely on *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942). In *Mishawaka*, however, the Court approved an award of the *infringer's* profits, holding that "the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark," 316 U.S. at 207; the Court did not consider or discuss any award of damages based on profits lost by the holder of the infringed mark. Moreover, the majority of decisions that have awarded lost profits to a plaintiff on the basis of the

defendant's sales, as plaintiff requests here, did so in the absence of an award of the defendant's profits. *See*, *e.g.*, *Krasnyi Oktyabr, Inc. v. Royal Sweet Bakery, Inc.*, 2007 WL 2815808, at *6 (E.D.N.Y. Sept. 25, 2007); *Muscletech Research & Development, Inc. v. East Coast Ingredients, LLC*, 2007 WL 655755, at *5-6 (W.D.N.Y. Feb. 26, 2007); *Ford Motor*, 697 F. Supp. at 1109. Despite language in § 1117 that arguably permits an award of both defendant's profits and plaintiff's damages,[3] courts have recognized that a plaintiff would reap a windfall if awarded both defendant's profits and plaintiff's lost profits based on the same sales, and have declined to presume that all infringing sales made by a defendant would have been made by plaintiff. *See*, *e.g.*, *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620-21 (9th Cir. 1993) (affirming an award of plaintiff's lost profits based on defendant's sales with no award of defendant's profits); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) (noting that the one-to-one presumption "provides an upper range" for an award of plaintiff's lost profits and recognizing that other factors, such as whether sales of the infringed product have declined, should be considered); *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 262-64 (E.D.N.Y. 2008) (requiring a plaintiff seeking to recover profits on lost sales to establish a "pre-infringement 'base line,'" and noting that an award of defendant's profits and profits lost by plaintiff would result in a double recovery); *Burndy Corp. v. Teledyne Indus., Inc.*, 584 F. Supp. 656, 665-66 (D. Conn. 1984), *aff'd* 748 F.2d 767 (2d Cir. 1984) (finding plaintiff's proof insufficient to establish a one-to-one ratio of counterfeit sales to lost sales); *Playboy Enters., Inc. v. P.K. Sorren Exp. Co.*, 546 F. Supp. 987, 998 (S.D. Fla. 1982) (finding that plaintiff "has not

---

[3] When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . .
15 U.S.C. § 1117(a).

demonstrated that it would have made any of the sales which defendant made"); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 208 U.S.P.Q. 421, 425, 428 (S.D.N.Y. 1980) (declining to apply the one-to-one presumption and holding that plaintiff was "not entitled to defendants' profits and its own lost sales in connection with the same transactions"); *see also* Thomas J. McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 30:73 (4th ed. 2009). *But see GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (awarding plaintiff both defendant's profits and plaintiff's lost profits based on the same transactions, without discussion of a double recovery, but declining to do so on a one-to-one basis and instead making a "reasonable approximation" that plaintiff would have sold one-third of the items sold by the infringing defendant).

### B. Evidence of Plaintiff's Lost Sales

In concluding that plaintiff failed to establish that it lost sales equal to defendants' infringing sales, I pointed out that plaintiff offered no evidence at trial that its sales volume declined, and did not present testimony from any customers who had been purchasing genuine Koon Chun hoisin sauce and switched to defendant's counterfeit product. M&O 11. I also noted that the price paid by defendants for infringing sauce was about 10% less than the price paid by importers of legitimate Koon Chun hoisin sauce. M&O 11 n.12. From these facts, I inferred that customers, while willing to purchase Koon Chun hoisin sauce at the lower prices defendants were able to offer, might have opted for a less expensive brand of hoisin sauce rather than pay the full price charged for genuine Koon Chun sauce.

Plaintiff now contends that I overlooked evidence that defendants sold both legitimate and counterfeit Koon Chun hoisin sauce to some of the same customers. Pl. Mem. 5-8. In particular, plaintiff points to its trial Exhibit 266, which includes invoices reflecting sales by defendants to

customers who purchased both legitimate and counterfeit hoisin sauces, sometimes for the same price.

This evidence does not persuade me to alter my conclusion about plaintiff's right to recover profits for lost sales. First, plaintiff did not argue, either at trial or in its post-trial submissions to the court, that these invoices constituted evidence of lost sales. This failure is particularly significant in this case, where a large number of invoices -- many written in a foreign language -- were submitted in evidence, where the invoices that the parties did call to the attention of the court were culled and translated, where the inferences the parties sought to have the court draw from the invoices were not apparent from the face of the documents, and where the parties sought and were given the opportunity to provide post-trial memoranda setting forth their arguments with respect to the evidence presented at trial. *See, e.g., Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (noting that a court "is not required to scour the party's various submissions to piece together appropriate arguments [because a] court need not make the lawyer's case" and denying a motion for reconsideration); *In re Kayak Mfg. Co.*, 1994 WL 49643, at *1 (W.D.N.Y. Feb. 18, 1994) (stressing that "a court's scrutiny of portions of exhibits to which a litigant has duly brought attention, of course, does not obligate such court to look through the rest of the haystack, so to speak, for the needles of probative evidence the litigant may wish to have presented").

Moreover, the evidence plaintiff contends I overlooked is of limited probative value. According to plaintiff, the invoices demonstrate purchases of both genuine and counterfeit Koon Chun hoisin sauce from defendants, and indicate that defendants' customers sometimes paid the same price for both. The invoices do *not* demonstrate, however, that defendants charged these customers as much as legitimate suppliers charged for genuine Koon Chun sauce, or that the

customers had purchased genuine Koon Chun sauce from legitimate suppliers in the past. Indeed, I have not found any evidence in the record of the amounts charged by legitimate distributors of genuine Koon Chun hoisin sauce to customers in the same class of trade as the customers who purchased infringing sauce from the defendants.[4]

Plaintiff's contention that each sale of counterfeit product would have been made by Koon Chun assumes that the demand for its hoisin sauce was inelastic, or insensitive to price. In fact, however, Koon Chun is a premium brand, and less expensive competitive brands are available. M&O 2. Accordingly, and for all the reasons stated above, plaintiff has failed to establish that it is entitled to an award of profits based on lost sales in addition to the treble damages award based on defendants' profits I have already rendered. Plaintiff's motion for reconsideration is therefore denied.

## II.    *Attorney's Fees and Costs*

In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). A reasonable rate should be calculated by considering what a reasonable, paying client would be willing to pay, taking into account, among other things, the complexity and difficulty involved in the case and the resources required to prosecute the case effectively. *Id.* Generally,

---

[4] In his testimony at trial, Raymond Chan, Koon Chun's regional manager for the Americas, testified that Koon Chun hoisin sauce sells for $22 to $25 per case in a cash and carry store. Trial Tr. 48. Defendants' average sales price to its customers was $20.55. M&O 9. Plaintiff suggests that the prices charged by defendants are not properly compared to the prices charged by the "cash and carry store" referred to in Mr. Chan's testimony, because a "cash and carry store" is "a few levels down the distribution chain" from the customers who purchased hoisin sauce from defendants. Pl.'s Reply in Further Supp. of its Mot. for Reconsideration at 4 n.1. There was, however, little evidence presented at trial about who defendants' customers were or where they might be found in the chain of distribution. The information that can be gleaned from the record suggests that defendants' customers included retail supermarkets. Trial Tr. 839 (testimony of defendant Zhan indicating that "a shop in Philadelphia" known as "TVJ Supermarket" owed defendant Star Mark money for hoisin sauce it purchased from defendants).

courts should determine fee awards by applying rates charged by attorneys employed in the district where the court sits. *Simmons v. New York City Trans. Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). A party may overcome the presumption in favor of rates charged by counsel in the forum district only by establishing "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id*. at 175. All requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiff seeks $1,117,054.46 in fees and costs. This amount includes $1,112,757.45 attributable to the law firm of Abelman, Frayne & Schwab ("AFS"), comprised of $898,988.75 in fees billed prior to June 15, 2009, the date plaintiff made its fee submission, and $96,849 in fees billed thereafter and submitted with its reply brief on August 10, 2009, and $116,921 in costs. Declaration of Anthony A. Coppola in Support of Plaintiff's Motion for Attorneys' Fees and Costs dated June 15, 2009 ("Coppola Decl."), ¶ 9; Plaintiff's Reply in Support of its Motion for Fees dated August 10, 2009 ("Pl. Fee Reply Mem."), 4 n.5. The fees sought as of June 15, 2009 reflect a total of 2,614.65 attorney hours and 549.8 paralegal hours. Coppola Decl. Ex. 2. Plaintiff also seeks $2,660.00 in attorney's fees and $1,636.71 in disbursements attributable to the law firm of Townsend and Townsend and Crew LLP ("Townsend"). Coppola Decl. ¶ 9.

Defendants contend that the fees sought by plaintiff are unreasonable because: 1) the hourly rates are too high; 2) counsel's time entries are too vague or too much time was expended on certain tasks; 3) time spent on unsuccessful motions and arguments and unnecessary discovery should not be reimbursed; and 4) staffing was at times redundant and duplicative. Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs and Pre-Judgment Interest dated July 13, 2009 ("Def. Fee Opp."), 5-47.   Accordingly, defendants argue that I should not award fees for the majority of counsel's hours, and that those hours that are compensated should be paid at reduced hourly rates.   At the end of their analysis, defendants calculate that plaintiff is entitled to a fee of $189,638.88.   Def. Fee Opp. 47.   Defendants further object to an award of fees submitted for the first time with Plaintiff's Reply Brief.   Defendants' Letter dated Aug. 11, 2009.

A.  *Hourly Rates Charged by Plaintiff's Counsel*

During the five years this case has been litigated, three partners, one associate and several paralegals performed the majority of the legal services at issue.   Plaintiff seeks reimbursement for these individuals at the following hourly rates: Schwab, a partner with 44 years of intellectual property law experience, $425-450; Coppola, a partner with 21 years of intellectual property law experience, $350-420; Crisona, a partner with 23 years of legal experience, $350-420; Choi, an associate with 6 years of intellectual property experience, $300-325; and various paralegals, $85-90.[5]   Coppola Decl. ¶ 11 and Ex. 2.   Plaintiff's counsel states that these "billing rates are well within the normal billing rates for intellectual property and corporate attorneys and their staff practicing in the New York metropolitan area."   Coppola Decl. ¶ 10.

The offices of plaintiff's counsel are located in Manhattan, in the Southern District of New York.   The circumstances in this case arguably support a departure from the forum rule; I am aware of few if any litigation firms specializing in intellectual property matters with offices based in the Eastern District of New York.   The parties did not specifically address this issue, however,

---

[5] Plaintiff states that "[t]hree other associates worked on this litigation whose legal experience at the time ranged from two to eleven years of intellectual property law work."   Coppola Decl. ¶ 11.   The total work performed by these three associates amounts to approximately 2% of counsel's total work.   *Id.* Ex. 2.   Plaintiff seeks reimbursement for these associates at the rate of $280 to $300 per hour.   *Id.*

and I need not reach it here because, as discussed below, the hourly rates sought by plaintiff's attorneys are consistent with those previously awarded in this district.

Recent cases awarding fees in the Eastern District of New York indicate that plaintiff's counsel's rates, while at the high end, are within the spectrum for this district. *See, e.g., Melnick v. Press*, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (collecting recent Eastern District cases and finding that, "the range of appropriate billing rates is $200-$375 per hour for partners and $100-$295 per hour for associates"); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (noting that recent hourly rates approved in the Eastern District range from $200 to $375 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for paralegals); *Expeditors Int'l of Wash. Inc. v. Rubie's Costume Co.*, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (approving an hourly rate of $340-$370 for an attorney with 25 years of litigation experience, although noting that it was on the high side).

Moreover, because intellectual property matters such as this one require specialized knowledge, courts in this district have approved higher hourly rates than those generally awarded. *See Microsoft Corp. v. Computer Care Ctr., Inc.,* 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept. 10, 2008) (approving hourly rates as high as $500 for a partner who has specialized in intellectual property litigation since 1994, and $385 for an associate); *Entral Group Int'l v. Sun Sports Bar Inc.*, 2007 WL 2891419, at *10 (E.D.N.Y. Sept. 28, 2007) (finding $560 per hour for a partner, $340 to $360 per hour for associates, and $138 per hour for a paralegal reasonable in a copyright infringement action). Although both *Microsoft* and *Entral* were decided before the Second Circuit's *Simmons* decision, hourly rates similar to those sought by plaintiff's counsel here were

approved after *Simmons* was decided in *Motorola, Inc. v. Abeckaser*, 07-CV-3963, Docket Entry 52 at 8-12; report and recommendation approved, 2009 WL 2568526 (E.D.N.Y. Aug. 19, 2009).

A reasonable hourly rate should also take into account any relevant case-specific variables. Here, plaintiff's counsel performed at a consistently high level in a case that posed some unique challenges, particularly during the discovery phase. The rates charged by AFS are their customary rates and are consistent with the rates charged by attorneys of their quality, expertise and experience. As discussed above, those rates have been approved in this district for similar work. Therefore, after reviewing the appropriate case specific variables, including awards made to counsel in similar cases in this judicial district, I approve the hourly rates sought by plaintiff's counsel.

### B. Time Expended

#### 1. Size of Fee Relative to Recovery

Without question, plaintiff seeks to recover a large fee, particularly in proportion to the amount recovered. Litigating this case, however, presented a variety of difficulties. One particular challenge confronted by plaintiff's counsel was that many of the relevant documents were written in Chinese. In addition, substantial time was expended because of defendants' own actions. *See, e.g., Landmark Chems., SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005) (noting that plaintiff bore some responsibility for protracting the proceedings, which justified, in part, the reasonableness of the hours expended by interpleader). I have previously found that defendants' "business practices and conduct prior to and throughout the litigation suggest an attempt to conceal infringing activity." M&O 18. For example, plaintiff's efforts to conduct discovery were complicated by defendants' failure to keep certain paper records for time periods required by the IRS and their alteration of certain electronic sales records, making the

volume of defendants' infringing sales far more difficult to determine.   M&O 18.   In part as a result of defendants' conduct during discovery, more than ten pre-trial conferences and motion hearings were required before this case was ready for trial.   On one occasion, I was compelled to direct that defendants' attorney refrain from making baseless attacks upon the integrity of plaintiff's counsel.   Minute Entry for telephone conference held on February 28, 2006. Similarly, on another occasion, I determined it necessary to alert defendants that, in my view, they were not construing plaintiff's discovery demands in good faith or responding to them responsibly, and that their recalcitrance was leading to burdensome motion practice.   Transcript of Discovery Conference dated Apr. 29, 2005, Docket Entry 221, at 11, 21.   For these reasons, and because plaintiff obtained injunctive relief as well as monetary damages, the large amount of fees sought relative to the dollar amount recovered is not a basis for a reduction in fees.

  2. *Vagueness*

Although attorneys are not required to provide "great detail" describing how their time was spent, they must provide sufficient information for the court to assess the reasonableness of the time expended.   *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005).   Here, a number of vague billing entries prevent me from properly evaluating the time spent and the fees charged.   For example, dozens of entries are billed simply as "Paralegal support in furtherance of matter."   Coppola Decl. Ex. 1.   In addition, there are many entries around the time of the trial that state simply, "Trial Preparation" or "Trial preparation and services re same." *Id*.   These vague descriptions make it difficult to determine the reasonableness of the time spent. *See Rosso v. Pi Mgmt. Assoc., L.L.C.*, 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing fee award for vague entries such as "Review of documents" which prevent a court from determining "whether the attorney who performed the work spent his or her time effectively").

13

### 3. Unsuccessful Motions and Arguments, Unnecessary Discovery

Defendants argue that plaintiff's fees should be reduced for what defendants contend were unsuccessful motions and arguments and unnecessary discovery demands. Def. Opp. 5-24. To determine whether a plaintiff's partial success requires a reduction in fees, the court first examines "whether the plaintiff failed to succeed on any claims wholly unrelated to the [successful] claims," and excludes the fees for such claims. *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)). Second, the court determines whether the plaintiff's failure to prevail on any unsuccessful claims that are interrelated with the successful claims warrants a reduction in the fee award. *Id.* at 101 (citing *Hensley*, 461 U.S. at 436). "[W]here . . . the plaintiff's claims involve a common core of facts or are based on related legal theories, and are therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (internal quotation marks and citation omitted). In all cases, "the court retains substantial discretion to take into account the specific procedural history and facts of each case" and to compensate counsel only for those hours "reasonably expended on the litigation." *Id*. at 99.

Here, defendants complain about time spent in connection with the amendment of the complaint; a motion to compel certain disclosure; arguments at trial and by motion seeking certain damages that were not ultimately granted; a motion to lift certain discovery protection; opposition to defendants' application for an extension of time to file an expert report; attempts to depose a former business partner of defendant Zhan; prosecution and defense of motions to preclude expert witness reports and testimony; discovery from defendants' financial services providers; and other miscellaneous fees deemed by defendants to be improvidently included. Def. Fee Opp. 6-29.

Defendants' arguments are largely unpersuasive. First, none of the challenged time entries were unrelated to plaintiff's successful claim for damages and a permanent injunction arising out of defendants' willful trademark infringement. Second, insofar as plaintiff has sought attorney's fees for its pursuit of unsuccessful theories of damages, such as lost profits, its efforts were undertaken in good faith and were not factually severable from its successful arguments. However, plaintiff did not prevail on its motion for reconsideration, and this warrants a reduction in the amount of fees recovered.

In their opposition, defendants seek a deduction for virtually every hour spent that did not result in evidence used at trial or a motion that led to a favorable ruling by the Court for the plaintiffs. This hour-by-hour analysis is misplaced, and ignores the reality that in the cut and thrust of any protracted litigation, no party wins every skirmish. Attorneys who do not risk the occasional unsuccessful argument most likely are doing their clients a disservice.

### 4. Time Spent Preparing the Fee Application

Defendants assert that plaintiff is not entitled to fees for time spent preparing its fee application. Def. Fee Opp. 26; Defendants' Letter dated Aug. 11, 2009. However, time spent on fee applications is generally compensable. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 428 (2d Cir. 1999) (citing *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1184 (2d Cir. 1996). *See also Carey*, 711 F.2d at 1148 ("In the ordinary course, prevailing parties are entitled to fees for preparing an application under section 1988."). In this case, however, the hours spent on the fee application were excessive. The bill submitted by plaintiff dated August 10, 2009 reflects fees totaling $45,191 based almost exclusively on time spent preparing plaintiff's reply to the defendants' objections to its fee application. Supp. Coppola Decl. Ex. 2. Although most of

counsel's time was spent rebutting the defendants' groundless objections, the amount of time expended was excessive.

### 5. *Duplicative Work and Billing Judgment*

Defendants contend that it was duplicative and unnecessary for attorneys Crisona, Coppola, Choi, and a paralegal to all attend the trial.   Def. Fee Opp. 30-32.   Defendants argue that only one attorney was necessary and the other individuals were mere "observer[s] and assistant[s]" whose time is not compensable.   Def. Fee Opp.   Both Crisona and Coppola questioned witnesses at the trial.   Moreover, the trial was document-intensive, and it was reasonable to have the assistance of an associate or paralegal.   Furthermore, AFS exercised billing judgment with respect to the trial fees, discounting its December 13, 2007 bill by $26,068.50. Coppola Decl. Ex. 1 (Debit Note dated December 13, 2007).   I find that this substantial discount more than adequately addresses defendants' legitimate concerns about the number of attorneys present at trial.

### 6. *Excessive Billing*

In addition to claiming that plaintiff's counsel should not be entitled to fees for certain tasks, defendants also argue that the amount of time billed for appropriately compensated tasks was excessive.   Def. Opp. 32-38.   For example, defendants contend it was unreasonable for plaintiff to expend 79 attorney hours and 16 paralegal hours in drafting a "routine" complaint and preparing a motion for an ex parte temporary restraining order and proposed order of seizure. Def. Opp. 33.   In support of their contention, defendants cite *Entral Group Int'l v. Sun Sports Bar Inc.*, 2007 WL 2891419, at *11 (E.D.N.Y. Sept. 28, 2009), in which a fee award was reduced by 40% after a finding that 132 hours spent on drafting a complaint and similar motions in a copyright infringement action was excessive.   *Id.*   Defendants' reliance on *Entral*, however, is misplaced.

16

In *Entral*, the court did indeed note that the time spent on the complaint and preliminary motions was excessive. Before doing so, however, the court described the case as "routine," and pointed out that the complaint was "strikingly similar" to others filed by the same plaintiff. *Id.* Morever, the number of hours spent by plaintiff's counsel in this case is not substantially more than 40% of the hours spend in *Entral*; even after the 40% reduction, counsel in *Entral* was compensated for 79 hours of time, and at higher hourly rates than those sought in this case. *Id.* at *10 (allowing rates of $560 for a partner, $340-360 for an associate and $138 for a paralegal).

Certainly, plaintiff's attorneys were not always as efficient as they might have been. For example, on one occasion, counsel filed a formal motion to compel when a simple letter application would have sufficed. Def. Fee Opp. at 9, Schedule B; Transcript of Discovery Conference dated Apr. 29, 2005, Docket Entry 221, at 35-36. While hindsight might suggest a more efficient expenditure of attorney time, the time entries I have reviewed are not unreasonable on their face and certainly do not merit the 40% reduction that the defendants request.

### C. Court's Calculation of a Reasonable Fee

For all of these reasons, a small reduction in the amount of fees sought by plaintiff is appropriate. As discussed above, both the hourly rates in this matter and, with few exceptions, the amount of time spent are reasonable. The time spent on plaintiff's reply in support of its fee petition was excessive, however, and warrants a deduction of $20,000. Furthermore, I conclude that the vague billing entries, time spent moving for reconsideration, and occasional inefficiencies described above support a further across-the-board 20% reduction. *See Carey*, 711 F.2d at 1146 (recognizing that judge "was acting within his discretion when he chose to make percentage reductions in response to defendants' detailed claims that fee application contained excessive and

duplicative hours"). Therefore, AFS's total fee request of $995,837.75 is first reduced by

$20,000 to $975,837.75, and is then reduced an additional 20% to $780,670.20.

Plaintiff has also requested $2,660.00 in attorney's fees incurred by the Townsend firm.

Plaintiff retained the California-based Townsend firm to oversee a preliminary investigation into

counterfeiting in New York. Defendants object to the availability of an award of pre-suit fees to

the Townsend firm. Def. Fee Opp. 53. Defendants' unsupported argument, however, is without

merit. The use of a firm with whom the plaintiff already had an existing relationship to determine

whether to file suit and provide advice on retaining counsel in New York was reasonable.

Moreover, the hourly rates charged by the Townsend firm are comparable to those approved for

AFS, and time spent by the Townsend firm was limited. Accordingly, plaintiff's request for

$2,660.00 in fees for the Townsend firm is granted.

### D. Costs

In addition to their fees, plaintiff seeks to recover $116,921 in costs. Pl. Reply Mem. 36.

Defendants list several objections to plaintiff's application for costs, including the absence of

documentation, the inclusion of expert testimony fees, the inclusion of certain deposition costs, the

inclusion of storage costs for seized goods and excessive photocopying charges. Def. Fee Opp.

50-53.

Objections as to documentation and the inclusion of expert testimony fees were addressed

by the submission of additional documentation by plaintiff and plaintiff's voluntary waiver of its

claim to approximately $23,000 in fees paid to an expert witness. I also find that the storage costs

were properly chargeable to the plaintiff as costs.

The remaining point of contention is whether the limits on taxable costs imposed by Local

Rule 54.1 should be applied to those items sought as expenses pursuant to statutory fee shifting.

Specifically, defendants object to recovery of costs associated with deposition transcripts not used at trial pursuant to Local Rule 54.1(c)(2) and a portion of plaintiff's photocopying costs pursuant to Local Rule 54.1(c)(5). Here, because the cost of the depositions and photocopies were reasonably incurred and are of the sort of expense reasonably billed to paying clients, I allow them. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257-58 (10th Cir. 1998) ("Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate.")

Plaintiff seeks reimbursement for certain costs that were not included as part of its original motion. Because defendants did not have an opportunity to address it, I deny plaintiff's request to recover a deposition fee charged by Star Mark's expert, Mr. Yi, for $2,100. Pl. Reply Mem. 30. Plaintiff's belated request to recover its filing fee of $150, Pl. Reply Mem. 33, is hardly controversial however, and should be permitted. Plaintiff's costs, after adjustment for the Yi deposition, total $114,821.

Because plaintiff failed to document its request for costs at the time of its June 15 submission, I further reduce plaintiff's recovery of costs by $2,500. This reduction is intended to compensate defendants for additional time spent challenging the award of costs without the benefit of the documentation that should have been provided as part of plaintiff's original submission. These reductions result in a final figure of $112,321 in disbursements by AFS.

Plaintiff has also requested $1,636.71 in costs incurred by the Townsend firm. These costs were incurred by an investigator retained by the Townsend firm. Defendants object to these costs on the ground of inadequate documentation. Def. Mem. 52-53. I find plaintiff's

representation an adequate basis to support this request, and the costs attributable to the Townsend firm are therefore granted in full.

## III.    Interest

Plaintiff seeks pre- and post-judgment interest on the award of damages and attorney's fees.   Upon a finding of willfulness, the Lanham Act provides that

> the court may award prejudgment interest on [a plaintiff's damages award] at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

15 U.S.C. § 1117(b).   Accordingly, an award of prejudgment interest under the Lanham Act is discretionary.   I exercise my discretion to award prejudgment interest on the $27,654.80 award for lost profits as requested by plaintiff.   Pl. Mem. 20.   Plaintiff indicates that the § 6621 interest rate ranged from 4% to 8% during the relevant time period.   Copolla Aff. Ex. 7.   I find an interest rate of 6% per annum to be reasonable to compensate plaintiff.   However, I do not find support for plaintiff's request for daily compounding of interest.   *See Sherwood Brands of R.I., Inc. v. Smith Enter., Inc.*, 2003 WL 22061871, at *3 (D.R.I. Mar. 31, 2003) (in calculating prejudgment interest on damages under the Lanham Act, applying the rates prescribed in 26 U.S.C. § 6621(a)(2), court denied request for daily compounding, opting instead for simple interest).   Therefore, plaintiff is awarded prejudgment interest without compounding (simple interest) at the rate of 6% per annum from June 14, 2004, the date the complaint was served, through the date of this order. Accordingly, I calculate that plaintiff is entitled to $9,173.82 in interest.[6]   The court is satisfied that plaintiff is adequately compensated for its attorney's fees and costs without an award of

---

[6] From June 14, 2004 to today's date is 2,018 days.   Thus, $27,654.80 times .06 times (2,018/365) equals $9,173.82.

pre-judgment interest and therefore declines to exercise its discretion to award interest on those items. *See Sherwood Brands*, 2003 WL 22061871, at *2 (citing cases for the proposition that prejudgment interest on attorney's fees is not the norm).

Pursuant to 28 U.S.C. § 1961(a), a prevailing party is entitled to post-judgment interest "on any money judgment in a civil case recovered in a district court." Accordingly, plaintiff is awarded post-judgment interest at the statutory rate prescribed by Section 1961.

## CONCLUSION

For the reasons discussed above, the Clerk of the Court is directed to enter judgment against all defendants in the total amount of $989,426.13, comprised of: $82,964.40 in damages, $9,173.82 in prejudgment interest on the $27,654.80 in actual damages; $780,670.20 in attorney's fees and $112,321 in costs attributable to AFS; and $2,660 in attorney's fees and $1,636.71 in costs attributable to the Townsend Firm. Plaintiff is awarded post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

_____/s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

Dated:        Brooklyn, New York
             December 23, 2009

*U:\TNJ 2009\koon chun v star mark\reconsideration, fees - final.docx*